2006 UT 5

STATE of Utah, Plaintiff and Appellee,

v.

James Earl LEE, Defendant
and Appellant.

No. 20040560.

Supreme Court of Utah.

Jan. 13, 2006.

Mark L. Shurtleff, Att'y Gen., Jeffrey S. Gray, Asst. Att'y Gen., Salt Lake City, and G. Mark Thomas, Vernal, for plaintiff.

Bryan Sidwell, Vernal, for defendant.

PARRISH, Justice:

¶ 1 Defendant James Earl Lee appeals his convictions for one count of aggravated kidnaping and two counts of aggravated assault. He argues that the trial court erred in failing to remove two potential jurors for cause dur-

ing voir dire and in failing to merge his aggravated kidnaping conviction with one of his aggravated assault convictions. He also argues that his attorney rendered ineffective assistance by failing to object to the composition of the jury panel and by failing to seek merger of the convictions. We disagree and affirm.

## BACKGROUND

¶ 2 When reviewing a challenge to a criminal conviction, "[w]e recite the facts from the record ... in the light most favorable to the jury's verdict." *State v. Geukgeuzian*, 2004 UT 16, ¶ 2, 86 P.3d 742 (alteration in original) (internal quotation marks omitted).

¶ 3 In the early morning hours of July 5, 2003, eighteen-year-olds Jennifer Hardinger and Judy Hullinger were walking along Highway 40 in Vernal en route to a friend's house. As they walked, they encountered Lee, who approached them, complimented them on their respective appearances, and invited them to "party" with him. When the girls declined his invitation, Lee offered to purchase alcohol for them. The girls again declined, and Hardinger walked away.

¶ 4 Hullinger was about to do the same when Lee grabbed her arm, complimented her on her body, and fondled her breasts. He then put his hand down the front of Hullinger's pants. In response, Hullinger kicked Lee, turned, and ran to Hardinger. The two girls initially ran. Then, thinking that their encounter with Lee was over, slowed their pace to a walk. Lee approached Hullinger unnoticed from behind, grabbed her hair, and slammed her to the pavement. He proceeded to drag her by the hair across Highway 40 to an alley separating two buildings, where he kicked her repeatedly in the head, rolled her over, pulled down her pants, and got on top of her.

¶ 5 Hardinger intervened, pulling Lee off Hullinger and then attempting to drag Hullinger to the highway. In response, Lee grabbed Hardinger and repeatedly demanded that she pull down her pants. Hardinger told Lee that she would, presumably as a ruse to trick him into relenting and to buy

some time. Hardinger then attempted to flee, but Lee caught her, slammed her to the ground, and kicked her several times in the face. Lee then desisted, stating, "I don't want to rape you girls anyway. You guys tell the police, I'll kill you." Finally, he left.

¶ 6 Because Lee was wearing steel-toed boots on the night in question, both girls sustained severe injuries as a result of Lee's beatings. Lee was subsequently arrested and charged with two counts of aggravated assault and two counts of aggravated kidnaping. After a preliminary hearing and bindover, the case went to trial.

¶ 7 During voir dire, the trial judge identified the participants and witnesses that would appear during the course of the trial and asked whether any of the potential jurors had a close personal relationship with any of them. Juror 17 disclosed that she had previously been prosecuted by the State prosecutor. She also stated that she knew both Hardinger and one of the police officers who had investigated the assault and who was scheduled to testify. When asked whether she would favor the testimony of those individuals, she responded that she would be fair. Later, in chambers, it was disclosed that Lee's attorney represented Juror 17's grandmother in business dealings. The judge asked Juror 17 whether her prior dealings with the State prosecutor and Lee's attorney would prevent her from being fair, and she responded that they would not. Juror 17 also stated that she had not talked to Hardinger "in about four or five weeks," that she "went to school with [Hardinger] sometimes," that Hardinger occasionally came "over to the house that [Juror 17] part[ied] at sometimes," but that her relationship with Hardinger would not compromise her impartiality. Both the State prosecutor and Lee's attorney passed Juror 17 for cause, but Lee's attorney eventually struck her from the jury through use of a peremptory challenge.

¶ 8 Also during voir dire, the trial judge asked if any potential jurors, their close friends, or members of their families had been involved with law enforcement. Juror 18 stated that she had "a niece by marriage that is married to a detective." When the trial judge asked Juror 18 whether that rela-

tionship would "cause [her] to be giving more weight to the police side of the table," she responded that it would not. Later, when asked whether she had a close relationship with any prospective witnesses, Juror 18 clarified her previous answer, stating that the detective to whom her niece was married had participated in investigating the assault and was scheduled to testify. The trial judge asked her how often she had contact with the detective, and Juror 18 responded, "Not very often." The trial judge then asked Juror 18 whether she would give the detective's testimony more weight, to which she responded that she would be fair.

¶ 9 At the conclusion of voir dire, the trial judge asked both parties whether the remaining potential jurors, which included Juror 18, constituted "the jury as selected." Lee's attorney responded, "It is, Your Honor."

¶ 10 This jury convicted Lee of two counts of aggravated assault and one count of aggravated kidnaping.[1] The trial court did not merge Lee's aggravated kidnaping conviction into his corresponding aggravated assault conviction, and Lee's attorney made no objection.

¶ 11 Lee appealed his convictions to the Utah Court of Appeals. The court of appeals subsequently transferred the appeal to this court because it involved a first degree felony conviction. *See* Utah Code Ann. § 78–2–2(3)(i) (2002). Pursuant to our pourover authority, we transferred the case back to the court of appeals. *See id.* § 78–2–2(4). We later rescinded that transfer so that we could hear Lee's appeal concurrently with *State v. King,* 2006 UT 3, 131 P.3d 202, and *State v. Winfield,* 2006 UT 4, 128 P.3d 1171, which, like Lee's appeal, raise the question of the applicable standard of review where challenges to jury composition are raised for the first time on appeal. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(i).

---

1. The briefs in this matter reflect the assumption of both parties that Lee was convicted of aggravated assault against both Hardinger and Hullinger and that he was convicted of aggravated kidnaping against Hullinger, though neither the

**ANALYSIS**

¶ 12 On appeal, Lee asserts two principal claims, each of which involves a related ineffective assistance of counsel claim. First, Lee argues that the trial court erred in failing to remove Jurors 17 and 18 for cause from the jury panel. Alternatively, he argues that his attorney rendered ineffective assistance by failing to ask that the trial court strike those jurors for cause. Second, Lee argues that the trial court erred in failing to merge his aggravated kidnaping conviction into his corresponding aggravated assault conviction. Alternatively, he argues that his attorney rendered ineffective assistance in failing to request such a merger. We address each argument in turn.

## I. THE TRIAL COURT'S FAILURE TO REMOVE JURORS 17 AND 18 FOR CAUSE

¶ 13 We first address Lee's claim that the trial court erred by failing to remove Jurors 17 and 18 for cause, and Lee's alternative claim that his attorney provided ineffective assistance by failing to raise for-cause challenges against those jurors.

### A. Did the Trial Court Err by Failing to Remove Jurors 17 and 18 For Cause?

¶ 14 Although Lee now argues that the trial court erred in failing to remove Jurors 17 and 18 for cause, Lee's counsel did not raise any objection to Jurors 17 and 18 in the trial court. When an appellant raises a claim on appeal that was not preserved in the trial court, we ordinarily review that claim only for plain error. Here, however, Lee contends that we should review the trial court's actions for an abuse of discretion. In support of that contention, he cites *State v. King,* 2004 UT App 210, 95 P.3d 282, in which the court of appeals applied an abuse of discretion standard to a challenge arising from voir dire even though the appellant failed to object to the jury panel in the trial court. *Id.* ¶¶ 10, 26.

information nor the jury's verdict explicitly says so. Because we find nothing in the record to contradict that assumption, we accept it for purposes of this appeal.

¶ 15 Lee's reliance on the court of appeals' decision in *King* is to no avail in light of our recent consideration of *King* on certiorari review. In *State v. King*, 2006 UT 3, ¶ 12, 131 P.3d 202, we reversed the court of appeals, holding that the plain error standard of review, not the abuse of discretion standard, applies when challenges to the jury's composition are raised for the first time on appeal.

¶ 16 Unfortunately for Lee, however, he is not in a position to obtain even plain error review because his counsel invited the alleged error that he now raises on appeal. Under our doctrine of invited error, Lee is simply not entitled to any appellate review.

¶ 17 In *State v. Winfield*, 2006 UT 4, 128 P.3d 1171, which was argued on the same day as Lee's appeal, we held that the doctrine of invited error precluded Winfield from contesting on appeal the composition of the jury that convicted him because he had affirmatively stated his acceptance of the jury in the trial court. *Id.* ¶ 18. In other words, the doctrine of invited error—not abuse of discretion or plain error—applies to claims of juror bias made for the first time on appeal in those cases where the appellant affirmatively proclaims the acceptability of the jury in the trial court. *See id.* ¶ 16.

¶ 18 If a party is dissatisfied with the thoroughness of voir dire or has concerns arising from a potential juror's responses to voir dire, that party may seek to remove the potential juror, propose additional questions, or ask the court for further questioning. *See* Utah R.Crim. P. 18(b). But where a party affirmatively expresses to the trial court his assent to the composition of the jury, that party cannot challenge the composition of the jury on appeal.[2] *Id.; see also State v. Hamilton*, 2003 UT 22, ¶ 54, 70 P.3d 111 (noting

that a party invites error if she "affirmatively represent[s] to the court that ... she [has] no objection").

¶ 19 Underlying this rule is the reality that voir dire, like every other aspect of trial, is an adversarial process. The "brilliance" of the adversarial process is that each party is responsible for exercising its for-cause and peremptory challenges with an eye to securing a jury that is favorable to its interests. *State v. Moton*, 749 P.2d 639, 642 (Utah 1988). While the trial court is responsible for ensuring the fairness of voir dire, our adversary system requires that it respect the trial strategies of the respective parties. *State v. Litherland*, 2000 UT 76, ¶ 32, 12 P.3d 92. Accordingly, when the parties fail to object to the composition of the jury, a trial court has no obligation to second-guess that silence if the voir dire process over which it presided was fundamentally fair. *See King*, 2006 UT 3, ¶¶ 22–23.

¶ 20 Here, the State argues that Lee "affirmatively waived any challenge to Juror 18 at trial" because, when asked whether the jury panel was "the jury as selected," Lee responded, "It is, Your Honor." We agree and therefore conclude, as we did in *Winfield*, that the invited error doctrine prevents Lee from challenging the jury's composition on appeal. *Winfield*, 2006 UT 4, ¶ 21.

### B. Did Lee's Attorney Provide Ineffective Assistance by Failing to Object to the Jury's Composition?

¶ 21 We turn to Lee's alternative claim that his attorney rendered ineffective assistance by failing to object to the jury's composition.[3] Although Lee raises this claim, we decline to address it substantively because it is inadequately briefed.

---

2. In *King*, we reviewed the defendant's newly raised claims of jury bias under a plain error standard only because the State failed to raise the doctrine of invited error. 2006 UT 3, ¶ 20 n. 2.

3. Some jurisdictions have held that the invited error doctrine "estop[s] a defendant from claiming ineffective assistance of counsel based on counsel's acts or omissions in conformance with the defendant's own requests." *People v. Majors*,

18 Cal.4th 385, 75 Cal.Rptr.2d 684, 956 P.2d 1137, 1153 (1998) (internal quotation marks omitted). Though we have decided that the invited error doctrine prevents Lee from challenging the jury's composition on appeal, we need not decide whether the invited error doctrine estops Lee from claiming ineffective assistance in this instance because we conclude that Lee has not adequately briefed his ineffective assistance argument in the first place.

¶ 22 An adequately briefed argument "contain[s] the contentions and reasons of the appellant with respect to the issues presented, including the grounds for reviewing any issue not preserved in the trial court, with citations to the authorities, statutes, and parts of the record relied on." Utah R.App. P. 24(a)(9). We have held that, to be adequate, briefs must provide "meaningful legal analysis." *State v. Gamblin*, 2000 UT 44, ¶ 7, 1 P.3d 1108. An adequate brief is one that fully identifies and analyzes the issues with citation to relevant legal authority. *State v. Green*, 2005 UT 9, ¶ 11, 108 P.3d 710. Mere "bald citation to authority," devoid of any analysis, is not adequate. *State v. Jaeger*, 1999 UT 1, ¶ 31, 973 P.2d 404 (internal quotation marks omitted). And we may refuse, sua sponte, to consider inadequately briefed issues. Utah R.App. P. 24(j); *accord Bernat v. Allphin*, 2005 UT 1, ¶ 38, 106 P.3d 707, *cert. denied*, —— U.S. ——, 125 S.Ct. 2550, 162 L.Ed.2d 276 (2005).

¶ 23 Here, the briefing of Lee's claim of ineffective assistance is inadequate. Lee's opening brief on the ineffective assistance issue is conclusory and provides no meaningful analysis. Rather, it simply asserts that his attorney should have objected to the trial court's failure to strike Jurors 17 and 18 for cause, that his attorney failed to do so, and that this failure constitutes ineffective assistance. Because Lee fails to explain why his attorney's failure to object constitutes ineffective assistance, we conclude that Lee's argument fails to meet the threshold of argumentative completeness mandated by rule 24 and decline to address it on its merits. *See Bernat*, 2005 UT 1, ¶ 38, 106 P.3d 707 (declining to review an inadequately briefed issue).

## II. THE TRIAL COURT'S FAILURE TO MERGE LEE'S AGGRAVATED KIDNAPING CONVICTION WITH HIS CORRESPONDING CONVICTION FOR AGGRAVATED ASSAULT

¶ 24 Having rejected Lee's claim that the trial court erred during voir dire, we turn to Lee's attacks on the trial court's failure to merge his aggravated kidnaping conviction into his corresponding conviction for aggravated assault. Because Lee did not object to the trial court's failure to merge the two convictions, he may obtain review of this claim only if he succeeds in establishing plain error, exceptional circumstances, or ineffective assistance of counsel. *See State v. Hansen*, 2002 UT 114, ¶ 21 n. 2, 61 P.3d 1062.[4] Lee argues both plain error and ineffective assistance of counsel, claiming that the trial court committed plain error by failing to merge the two convictions and that his attorney provided ineffective assistance by failing to request that the trial court do so. We address each argument in turn.

### A. Did the Trial Court Err by Failing to Merge Lee's Aggravated Kidnaping Conviction into His Corresponding Aggravated Assault Conviction?

¶ 25 Lee argues that the trial court committed plain error by failing to merge his aggravated kidnaping conviction into his corresponding aggravated assault conviction. Lee maintains that any kidnaping that transpired on the night in question was merely a component of the corresponding assault; it was incidental to, and indeed indistinguishable from, the assault and should therefore be merged for sentencing purposes into Lee's corresponding conviction for aggravated assault. We disagree.

¶ 26 To establish plain error, Lee must demonstrate that "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome." *State v. Hassan*, 2004 UT 99, ¶ 10, 108 P.3d 695 (internal quotation marks omitted). Because merger questions are legal in nature, we review them for correctness. *See State v. Fedorowicz*, 2002 UT 67, ¶ 59, 52 P.3d 1194.

¶ 27 In addressing the merger issue, Lee and the State confine their analysis to the test we set forth in *State v. Finlayson*,

---

4. Lee may so argue because, in contrast to the previous issue, he did not affirmatively assent to the trial court's decision not to merge the charges. The invited error doctrine is therefore inapplicable. *State v. Hamilton*, 2003 UT 22, ¶ 54, 70 P.3d 111 (noting that the invited error doctrine applies when a party affirmatively leads the trial court into error).

2000 UT 10, 994 P.2d 1243. That test provides:

"[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnaping the resulting movement or confinement:

(a) Must not be slight, inconsequential and merely incidental to the other crime;

(b) Must not be of the kind inherent in the nature of the other crime; and

(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection."

*Id.* ¶ 23 (alteration in original) (quoting *State v. Buggs,* 219 Kan. 203, 547 P.2d 720, 731 (1976)).

■■■ ¶ 28 The Utah Code, however, provides another merger analysis in section 76–1–402. That provision states:

(3) A defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense. An offense is so included when:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(b) It constitutes an attempt, solicitation, conspiracy, or form of preparation to commit the offense charged or an offense otherwise included therein; or

(c) It is specifically designated by a statute as a lesser included offense.

Utah Code Ann. § 76–1–402(3) (2003). Determining whether merger is appropriate under this provision is a simple matter of statutory construction, *State v. Bluff,* 2002 UT 66, ¶ 37, 52 P.3d 1210, requiring us to "compar[e] the statutory elements of the two crimes as a theoretical matter," *Fedorowicz,* 2002 UT 67, ¶ 59, 52 P.3d 1194 (internal quotation marks omitted).

¶ 29 In the interest of clarity, we find it appropriate to address the relationship between the two aforementioned merger tests. The totality of our approach in *Finlayson* illustrates that relationship. In *Finlayson,* the defendant was convicted of aggravated

kidnaping, rape, and forcible sodomy. 2000 UT 10, ¶ 1, 994 P.2d 1243. On appeal, he argued that aggravated kidnaping was a lesser included offense of either rape or forcible sodomy and·that his aggravated kidnaping conviction consequently merged into the other convictions. *Id.* ¶ 7. In analyzing that claim, we looked first to section 76–1–402 and noted that, because of the statutory elements of the crimes in question, aggravated kidnaping was not a lesser included offense of either of the other two crimes under that section. We consequently concluded that the defendant's aggravated kidnaping conviction did not merge into the other two convictions pursuant to section 76–1–402. *Id.* ¶ 16.

¶ 30 We recognized, however, that "[s]ection 76–1–402 ... is not the only basis for finding that one set of facts may give rise to a merger of two or more separate crimes so as to preclude a multitude of convictions for essentially the same conduct." *Id.* ¶ 17. As an example of this principle, we cited *State v. Couch,* 635 P.2d 89 (Utah 1981), which "dealt with the issue of when a kidnaping may merge into a sexual assault crime." *Finlayson,* 2000 UT 10, ¶ 17, 994 P.2d 1243; *see also Couch,* 635 P.2d at 91. In discussing *Couch,* we noted that "[b]y definition, every rape and forcible sodomy is committed against the will of the victim and therefore involves a necessary detention, which is, of course, required by the kidnaping statutes. Thus, absent a clear distinction, virtually every rape and robbery would automatically be a kidnaping as well." *Finlayson,* 2000 UT 10, ¶ 19, 994 P.2d 1243.

■■■ ¶ 31 In other words, we recognized that, in some factual scenarios, crimes may be so related that they must merge even though neither is a lesser included offense of the other under section 76–1–402. Where two crimes are defined narrowly enough that proof of one does not constitute proof of the other, but broadly enough that both may arise from the same facts, merger may be appropriate. Otherwise, a criminal defendant could be punished twice for conduct that amounts to only one offense, a result contrary to protections against double jeopardy in general, *see State v. Harris,* 2004 UT 103,

¶ 22, 104 P.3d 1250, and the merger doctrine in particular, *see State v. Lopez*, 2004 UT App 410, ¶ 8, 103 P.3d 153 ("Courts apply the merger doctrine as one means of alleviating the concern of double jeopardy that a defendant should not be punished twice for the same crime.").

¶ 32 In summary, a proper merger analysis requires consideration of both section 76–1–402 and the *Finlayson* factors. If one conviction is a lesser included offense of another conviction under section 76–1–402, the convictions merge. If not, the *Finlayson* factors must be assessed to determine whether merger is appropriate. The court of appeals recently conducted just such an analysis, articulating it as follows:

> To identify a lesser included offense, we must first determine if the lesser offense is established by proof of the same or less than all the facts required to establish the commission of the offense charged. If the greater offense cannot be committed without necessarily having committed the lesser, then the lesser offense merges into the greater crime. Thus, unless the crimes involved have multiple variations, we will look only to the statutory elements of the two crimes in making this determination. If, however, from the statutory language we conclude that it is possible for one statute to be a lesser included offense of the other, we must look beyond the statutory elements and compare the evidence.

*State v. Smith*, 2003 UT App 179, ¶ 12, 72 P.3d 692 (internal quotation marks and citations omitted).

¶ 33 Having articulated the proper analysis for merger, we now apply it to Lee's case. We turn first to section 76–1–402 and note that aggravated kidnaping is not "specifically designated by a statute as a lesser included offense" of aggravated assault. Utah Code Ann. § 76–1–402(2)(c). *See generally* Utah Code Ann. §§ 76–5–101 to –113 (2003 & Supp.2005) (discussing assault and related crimes). Nor does aggravated kidnaping "constitute[ ] an attempt, solicitation, conspiracy, or form of preparation to commit" aggravated assault. Utah Code Ann. § 76–1–402(3)(b). Finally, proving aggravated kidnaping does not require "proof of the same or less than all the facts required to establish the commission of" aggravated assault, *id.* § 76–1–402(3)(a), because detention is a required statutory element of aggravated kidnaping, *id.* §§ 76–5–301, –302, but not of aggravated assault, *id.* §§ 76–5–101 to –102. We accordingly hold that aggravated kidnaping is not a lesser included offense of aggravated assault under section 76–1–402.

¶ 34 We next assess Lee's claim of merger under the *Finlayson* factors. We conclude that dragging Hullinger across a highway by her hair was not "slight, inconsequential and merely incidental to" the assault Lee had already commenced against her. *Finlayson*, 2000 UT 10, ¶ 23, 994 P.2d 1243. Nor was Lee's movement of Hullinger to a location across Highway 40 "inherent in the nature of" his assault on her. *Id.* Indeed, most assaults do not involve the relocation of the victim from one site to another. Finally, Hullinger's aggravated kidnaping carried a "significance independent of" the aggravated assault, as it allowed Lee to carry Hullinger away from Hardinger, thereby rendering further assault, or even rape, "substantially easier of commission." *Id.* In addition, carrying Hullinger to the alley between two buildings at a very early hour of the morning made the assault far more difficult to detect than it would have been on Highway 40 and thereby "substantially lessen[ed] [Lee's] risk of detection." *Id.*

¶ 35 We reject Lee's claim that his convictions were subject to merger under the *Finlayson* test. Because the trial court did not err in failing to merge the convictions, Lee's plain error claim fails. *Hassan*, 2004 UT 99, ¶ 10, 108 P.3d 695.

## B. Did Lee's Attorney Provide Ineffective Assistance of Counsel by Failing to Request Merger?

¶ 36 We finally address Lee's argument that his attorney provided ineffective assistance by failing to object to the trial court's failure to merge his aggravated kidnaping conviction with one of his aggravated assault convictions. Unlike Lee's argument that his attorney rendered ineffective assistance by failing to object to the composition of the

jury, Lee's argument that his attorney rendered ineffective assistance by failing to seek merger is adequately briefed.

¶ 37 To prove that his attorney rendered ineffective assistance, Lee must demonstrate that (1) "counsel's performance was so deficient as to fall below an objective standard of reasonableness" and (2) "but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different." *Myers v. State*, 2004 UT 31, ¶ 20, 94 P.3d 211 (internal quotation marks omitted).

¶ 38 Lee can establish neither element. Because Lee's aggravated kidnaping conviction does not merge with his corresponding aggravated assault conviction, counsel's failure to request merger did not "fall below an objective standard of reasonableness" *id.*, and did not, at any rate, lead to a less favorable outcome for Lee. We therefore reject Lee's claim that his attorney was ineffective when he failed to seek merger.

### CONCLUSION

¶ 39 We affirm Lee's convictions. Because Lee's counsel affirmatively voiced approval of the jury's composition, the invited error doctrine precludes Lee from challenging the jury composition on appeal. Lee's argument that his attorney provided ineffective assistance by failing to object to the jury's composition is inadequately briefed, and we consequently do not address it. We also conclude that it would have been inappropriate to merge Lee's aggravated kidnaping conviction with his corresponding aggravated assault conviction under either Utah Code section 76–1–402 or the *Finlayson* test. Therefore, the trial court did not err by failing to merge those convictions, and Lee's attorney did not render ineffective assistance by failing to request that it do so.

¶ 40 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.