**2015 UT App 27**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
JAMES RAPHAEL SANCHEZ,
Defendant and Appellant.

Opinion
No. 20130276-CA
Filed February 5, 2015

Third District Court, Salt Lake Department
The Honorable Denise P. Lindberg
No. 111903658

Ralph W. Dellapiana, Peter Daines and John B.
Plimpton, Attorneys for Appellant

Sean D. Reyes and Tera J. Peterson, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGES
GREGORY K. ORME and JOHN A. PEARCE concurred.

ROTH, Judge:

¶1     Defendant James Raphael Sanchez appeals his convictions for aggravated kidnapping and for assault with substantial bodily injury. Sanchez argues that the court erred when it failed to merge his convictions and when it failed to provide the jury with his proposed kidnapping-related jury instruction. We affirm.

BACKGROUND

¶2     In April 2011, A.J. was asleep in the apartment she shared with Sanchez. Sanchez woke her up to ask if a friend could stay over, and she said no. Sanchez became violent, hitting and biting A.J. and pulling her hair. A.J. was able to escape from the apartment and ran down the hallway to a neighboring apartment where she pounded on the door seeking help. The woman who opened the apartment door (Neighbor) testified that A.J. was clothed in only a shirt and underwear and was crying and "panicky." Neighbor attempted to help A.J. inside, but Sanchez appeared at the door and grabbed A.J. by the wrist saying, "Come on baby, let's go." A.J. tried to free herself from Sanchez's grasp, dropping to the floor and screaming for him to let go, but Sanchez dragged A.J. approximately fifty-eight feet back down the hallway to the apartment from which she had just escaped, then pulled her inside and shut the door. Neighbor followed after them, beating on the door and yelling at Sanchez to let A.J. out. She also called the police. Neighbor could hear A.J. crying and telling Sanchez, "Stop, you're hurting me." Neighbor also heard a sound that Neighbor thought was Sanchez slamming A.J.'s head into the wall.

¶3     Several minutes later, Sanchez shoved A.J. out of the apartment and back into the hallway. Now there was a bite mark on her cheek, and her ear was nearly ripped off. A.J. was covered in blood and bite marks, and she was transported to the hospital to be treated for her injuries. She gave police a written statement briefly describing what Sanchez had done:

> I was asleep and James Sanchez came home and asked me if his friend could stay over and [I] said no and he became violent first pulled my hair and then continued to bite, slap, my head, and bit on to my ear and ripped it. Then he bit my face.

¶4    Sanchez was charged with aggravated kidnapping and assault with substantial bodily injury. Before trial, he asked for a supplemental jury instruction informing the jury it must find that "the unlawful detention or movement of the victim must be significantly independent of the crime of assault" in order to reach a conviction on the aggravated kidnapping charge. The proposed supplemental instruction also contained three factors—known as the *Finlayson* factors[1]—to help the jury determine if the evidence supported convictions for both aggravated kidnapping and assault, or just assault. The trial court denied the request, stating that Sanchez was essentially asking the jury to determine the issue of merger and that merger was a decision properly reserved for the trial court following the entry of convictions by the jury. The jury convicted Sanchez of both charges, and he requested that the trial court merge the two convictions. The court denied his motion. Sanchez appeals.

ISSUES AND STANDARDS OF REVIEW

¶5    Sanchez first argues that the trial court erred when it failed to merge his convictions.[2] Merger is a question of law, which we review for correctness. *State v. Diaz*, 2002 UT App 288, ¶ 10, 55 P.3d 1131.

---

1. *See State v. Finlayson*, 2000 UT 10, ¶ 23, 994 P.2d 1243.

2. Sanchez argues that the trial court erred in alternatively ruling that even if merger were appropriate, his assault conviction would merge into his aggravated kidnapping conviction rather than the other way around. Because we affirm the trial court's decision and determine that merger was inappropriate, we do not reach this issue.

¶6    Sanchez next argues that the trial court erred when it declined to provide the jury with his proposed instruction. "[T]he refusal to give a jury instruction is reviewed for abuse of discretion," though the amount of deference varies depending on the type of issue presented. *State v. Berriel*, 2013 UT 19, ¶ 8, 299 P.3d 1133 (citation and internal quotation marks omitted). "On issues that are primarily or entirely factual, we afford significant deference; on issues that are primarily or entirely legal in nature, we afford little or no deference." *Id.* The proposed jury instruction in this case required the trial court to determine whether merger is a question best resolved by a jury or by a judge, a determination we conclude was legal in nature.

ANALYSIS

I. Merger

¶7    Sanchez argues that the trial court should have merged his assault and aggravated kidnapping convictions because his detention of A.J. had no significance independent from the assault. We find no error in the court's decision not to merge the two convictions.

¶8    The doctrine of merger seeks to avoid a circumstance where "a criminal defendant could be punished twice for conduct that amounts to only one offense." *State v. Lee*, 2006 UT 5, ¶ 31, 128 P.3d 1179. Thus, "[w]here two crimes are defined narrowly enough that proof of one does not constitute proof of the other, but broadly enough that both may arise from the same facts, merger may be appropriate." *Id.* In particular, merger can become an issue where "a defendant . . . has been charged with committing both a violent crime, in which a detention is inherent, and the crime of kidnaping based solely on the detention necessary to the commission of the companion crime." *State v. Diaz*, 2002 UT App 288, ¶ 17, 55 P.3d 1131.

¶9     In *State v. Finlayson*, 2000 UT 10, 994 P.2d 1243, the Utah Supreme Court adopted a three-part test to determine whether a kidnapping conviction can stand on its own under circumstances where, as in the case before us, "a taking or confinement is alleged to have been done to facilitate the commission of another crime." *Id.* ¶ 23 (citation and internal quotation marks omitted). The court held,

> [T]o be kidnaping the resulting movement or confinement:
>> (a) Must not be slight, inconsequential and merely incidental to the other crime;
>> (b) Must not be of the kind inherent in the nature of the other crime; and
>> (c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

*Id.* (citation and internal quotation marks omitted). Sanchez argues that "[a]ny detention accompanying [the assault] was a side effect that is not significant enough, in and of itself, to justify a separate conviction for aggravated kidnapping." Our case law provides useful guidance on how the *Finlayson* factors are to be applied.

¶10     In *Finlayson*, the defendant sexually assaulted a woman in his apartment. *Id.* ¶¶ 3–4. As the assault unfolded, she made unsuccessful efforts to escape, and the defendant ultimately handcuffed her to facilitate the sexual crime. *Id.* ¶ 4. After the assault, the defendant made the victim wait for ten minutes while he dressed before taking her home. *Id.* ¶ 5. As they left his apartment, Finlayson covered the victim's head with a jacket so she would not see the address and then took an unnecessarily long route back to her home, where he finally released her. *Id.* A jury convicted the defendant of rape, forcible sodomy, and

aggravated kidnapping. *Id.* ¶¶ 1, 13. For purposes of analyzing Finlayson's claim that the trial court had erred in refusing to merge the kidnapping conviction into the sexual assault convictions, the Utah Supreme Court broke the events of the night into two components. *Id.* ¶¶ 7, 22–23, 32–35. First, the court concluded that "there was no detention prior to or during the sexual assault that exceeded the detention inherent in the sex crimes," and thus Finlayson's "detention of the victim up to the time of the rape and sodomy was incidental to the assault, rather than having an independent significance." *Id.* ¶¶ 22–23. The court then examined Finlayson's actions following completion of the sexual assault and determined that "the detention appears sufficient to support" an independent kidnapping conviction because his detention of the victim during the combined ten-minute wait at his apartment and the hour-long car ride was substantially longer than necessary for the commission of the underlying crimes. *Id.* ¶¶ 32–33.[3]

¶11    Later, in *State v. Lee*, 2006 UT 5, 128 P.3d 1179, the supreme court considered whether a defendant's aggravated kidnapping conviction should merge with one of his aggravated assault convictions in a case that has some useful similarities to the case before us. *See id.* ¶ 1. The defendant had approached two women walking along a highway. *Id.* ¶ 3. He invited them to "'party'" with him and offered to purchase alcohol. *Id.* The women declined, and the defendant then grabbed one of the women, sexually assaulting her. *Id.* ¶¶ 3–4. After she broke free,

---

3. The supreme court affirmed this court's reversal of *aggravated* kidnapping because there was insufficient evidence to support the State's theory that the defendant's actions were done to "'facilitate flight' from the commission of the sex crimes," the only aggravating factor presented. *Finlayson*, 2000 UT 10, ¶¶ 32, 35 (citing Utah Code Ann. § 76-5-302 (Michie 1995) (aggravated kidnapping statute)).

the two women ran away. *Id.* ¶ 4. "Then, thinking that their encounter with [the defendant] was over, [they] slowed their pace to a walk." *Id.* The defendant ran up from behind, slamming the woman he had assaulted to the pavement. *Id.* He then dragged her across the highway and into an alley "where he kicked her repeatedly in the head" and pulled down her pants. *Id.* The other woman tried to intervene, but the defendant slammed her to the ground as well, kicking her in the face. *Id.* ¶ 5. The supreme court determined that the defendant's detention of the first woman by dragging her across the highway was not "'slight, inconsequential and merely incidental' to the assault." *Id.* ¶ 34 (quoting *Finlayson*, 2000 UT 10, ¶ 23). Nor was the defendant's movement of the victim "'inherent in the nature'" of the assault he committed. *Id.* (quoting *Finlayson*, 2000 UT 10, ¶ 23). "Indeed, most assaults do not involve the relocation of the victim from one site to another." *Id.* Finally, the court determined that the defendant's recapture and relocation of the victim made commission of the assault easier because it removed the woman from her friend and made detection by others less likely. *Id.*

¶12    The facts of the assault in the case before us align more readily with *Lee* than with *Finlayson*. Here, A.J. escaped from the apartment after Sanchez's first assault and sought refuge in the neighboring apartment down the hall. But Sanchez pursued her and, before Neighbor could pull A.J. inside, grabbed A.J. by the wrist and dragged her back down the hall fifty-eight feet to their apartment, where he closed the door and escalated his attack. Sanchez argues that the assault was simply one continuous act. But we conclude that, as in *Lee*, A.J. interrupted the attack by breaking free from Sanchez, escaping the apartment, and then seeking refuge with Neighbor. *See id*. Thus, Sanchez's recapture of A.J. and his dragging her down the hallway and back inside their apartment was not "slight, inconsequential and merely incidental" to the assault. *See Finlayson*, 2000 UT 10, ¶ 23 (citation and internal quotation marks omitted). Neither was Sanchez's movement of the victim "inherent in the nature" of the assault.

*See id.* (citation and internal quotation marks omitted). Indeed, it appears that Sanchez's motivation in taking A.J. back to their own apartment was to remove her from any help that Neighbor was trying to offer. As in the very similar circumstances of *Lee*, these actions made it easier for Sanchez to commit the second assault. *See* 2006 UT 5, ¶ 34; *Finlayson*, 2000 UT 10, ¶ 23 (holding that in order to support a separate conviction for aggravated kidnapping, the assailant's detention must have made the assault "substantially easier" to commit (citation and internal quotation marks omitted)).

¶13    Sanchez argues that relocating A.J. did not make the assault easier to commit because, unlike in *Lee* where the victim's friend had physically intervened and had made assault on one side of the highway more difficult for the defendant, *see* 2006 UT 5, ¶ 5, Sanchez "had little to no difficulty assaulting [A.J.] in the immediate presence of [Neighbor]." In essence, Sanchez argues that because Neighbor's efforts to intervene were futile, his convictions should merge, implying that had Neighbor been able to physically place herself between Sanchez and A.J. then merger would be inappropriate. But Neighbor's ability to interfere is immaterial to our analysis. Here, Sanchez dragged his victim away from the only source of aid then available to a place behind a locked door. It is no stretch to infer that by so doing he intended to make his "crime substantially easier of commission"—and to conclude that it was, in fact, easier to commit—than had he tried to accomplish the same crime at the door of the Neighbor's apartment, in the face of her protests, or elsewhere in the hallway where others might have seen and intervened. *See Finlayson*, 2000 UT 10, ¶ 23 (citation and internal quotation marks omitted).

¶14    Sanchez also argues that his dragging A.J. down the hallway to their apartment should not have played a part in the merger analysis. The trial court considered Sanchez's movement of A.J.—roughly fifty-eight feet—as a factor in its decision to deny Sanchez's merger request, ruling that "dragging . . . was

not 'inherent in the nature' of the assault." (Quoting *State v. Finlayson*, 2000 UT 10, ¶ 23, 994 P.2d 1243.) And the State argues on appeal that Sanchez's act of dragging A.J. supports a determination that Sanchez's detention of A.J. had "significance independent of the assault" and was "not slight or inconsequential" or "inherent in the nature of the assault." Sanchez argues that any movement of A.J. is an improper basis for denying merger "because the jury was not instructed on it." Sanchez points to Jury Instruction No. 16, which defines kidnapping as having "detained or restrained" a person unlawfully against her will "for a substantial period of time, or . . . in circumstances that exposed her to risk of bodily injury" and does not mention movement as an element of the crime. He thus argues that his kidnapping conviction could not have been "based on a jury finding beyond a reasonable doubt that he moved [A.J.] any distance, but [only] that he detained or restrained her." Sanchez argues that with no finding from the jury to support a conclusion that he moved A.J., any reliance by the trial court on movement as a basis to deny merger was error.

¶15    But Sanchez ignores Jury Instruction No. 22, which states, "'Detain' or 'restrain' mean[s] keep from proceeding, delay, keep in custody, confine, control, check, repress, limit, or restrict." Common experience teaches that one person can detain or restrain another in the ways described in the instruction just as effectively by moving her away from where she wants to go as by confining her to a place she does not want to be. Accordingly, we agree with the State that the jury easily could have found Sanchez's movement of A.J. from just outside Neighbor's apartment, down the hallway, and into their apartment to have been for the purpose of keeping A.J. "in custody" and "from proceeding," as well as for confining, controlling, checking, repressing, limiting, or restricting her—all proper considerations on which a kidnapping conviction could be based. And the supreme court, in both *Finlayson* and *Lee*, seemed to treat the defendants' movement of the victims simply as a form or variation of detention. *See Lee*, 2006 UT 5, ¶¶ 27, 34 (establishing

that kidnapping occurs when there is "movement or confinement" and observing that most assaults do not require relocating the victim); *Finlayson*, 2000 UT 10, ¶¶ 23, 32–33 (determining that the detention involved in moving the victim from one room to another in the course of committing the crime was inherent in the sexual assault but driving the victim on a circuitous route to a release point after the assault had been completed was not). Thus, the trial court was fully justified in taking Sanchez's "movement" of the victim into account as part of the circumstances it considered in denying Sanchez's request to merge his convictions.

¶16    We therefore conclude that the trial court did not err in refusing to merge Sanchez's kidnapping and assault convictions.[4]

## II. Proposed Jury Instruction

¶17    Sanchez next argues that the trial court erred when it refused to give a supplemental jury instruction he proposed. "Failure to give requested jury instructions constitutes reversible error only if their omission tends to mislead the jury to the prejudice of the complaining party or insufficiently or erroneously advises the jury on the law." *State v. Stringham*, 2001 UT App 13, ¶ 17, 17 P.3d 1153 (citation and internal quotation marks omitted). After reviewing the proposed instruction, we conclude that Sanchez suffered no prejudice due to its omission

---

4. The State argues that the *Finlayson* analysis does not apply to this case because of amendments made to Utah's aggravated kidnapping statute since *Finlayson* was issued. However, because Sanchez has not demonstrated error in the trial court's merger ruling, we need not consider this argument because we can affirm on an alternative ground.

and that the jury was not insufficiently or erroneously advised on the law.

¶18    Jury Instruction No. 16 instructed the jury that it should find Sanchez guilty of aggravated assault if it found

> 1. That [Sanchez]
> 2. In the course of committing:
> 3.A.  UNLAWFUL  DETENTION,  meaning that he:
>> (1) intentionally or knowingly,
>> (2) without authority of law,
>> (3) and against the will of [A.J.],
>> (4) detained or restrained her;
>
> OR
>
> 3.B. KIDNAPING, meaning that he:
>> (1) intentionally or knowingly,
>> (2) without authority of law,
>> (3) and against the will of [A.J.],
>> (4) (a) detained or restrained her for a substantial period of time, or
>> (b)  detained  or  restrained  her  in circumstances  that  exposed  her  to  risk  of bodily injury;
> 4. He acted with the intent to inflict bodily injury on or to terrorize [A.J.]; AND
> 5. [Sanchez] and [A.J.] were co-habitants at the time of the offense.

Sanchez does not dispute that this instruction correctly sets forth the requirements of Utah's aggravated kidnapping statute. *See* Utah Code Ann. § 76-5-302 (LexisNexis Supp. 2014) (aggravated kidnapping); *see also id*. § 76-5-301 (2012) (kidnapping); *id*. § 76-5-304 (unlawful detention).

¶19 Prior to trial, however, Sanchez proposed a supplemental instruction that instructed the jury on the three factors set forth in *Finlayson* as a test for whether two crimes should merge:

> In considering whether [Sanchez] is guilty of both of the charges before you, Aggravated Kidnapping and Assault, or of Assault only, you are instructed as follows:
>
> In order to justify a separate conviction for Aggravated Kidnapping, the unlawful detention or movement of the victim must be significantly independent of the crime of Assault. That is, the resulting movement or confinement:
>
> > 1. Must not be slight, inconsequential or merely incidental to the Assault, AND
> > 2. Must not be of the kind inherent in the nature of the crime of Assault, AND
> > 3. Must have some significance independent of the crime of Assault that it makes the other crime substantially easier in commission or substantially lessens the risk of detection.

Sanchez argued that this instruction was necessary to help the jury determine "whether there was a kidnapping when there is also an assault alleged." The State argued that the proposed instruction asked the jury to decide the question of merger, an issue to be resolved by the trial court and then only after the jury had returned convictions for both crimes. The trial court agreed, ruling that the factors set forth in the proposed instruction were "instruction to the judge to consider in the course of making a legal determination[, a]nd as a result it was not something that was appropriate for the jury to consider." We agree.

¶20 As we have noted, "[t]he trial court cannot assess whether, under the particular facts of the case, one charge merges into another until the prosecution has presented its case

and the jury has convicted the defendant of multiple charges. To rule otherwise would provide protection against a danger that does not exist." *State v. Lopez*, 2004 UT App 410, ¶ 8, 103 P.3d 153; *accord State v. Ellis*, 2014 UT App 185, ¶ 12, 336 P.3d 26. On appeal, however, Sanchez contends that his proposed jury instruction was necessary to prevent him from being doubly punished for the same act. Without the instruction, he argues, the jury was not required to find that any detention or restraint, as defined in the aggravated kidnapping instruction, was "significantly independent" from the detention inherent in the underlying assault. In this regard, Sanchez urges us to adopt an approach that allocates to the jury, and not the judge, responsibility for resolving the question of whether facts fulfilling the elements of a kidnapping statute are instead "incidental" to an underlying crime.[5] Sanchez also cites a number of cases that require a narrow interpretation of

---

5. Sanchez argues that this approach has been adopted in other jurisdictions and cites cases in support of his proposition. *See Alam v. State*, 776 P.2d 345, 348–49 (Alaska Ct. App. 1989); *State v. Rich*, 305 N.W.2d 739, 742 (Iowa 1981); *People v. Adams*, 205 N.W.2d 415, 423 (Mich. 1973). But only *Adams* seems to explicitly allocate the merger issue to the jury rather than the trial court. 205 N.W.2d at 424. The other cases Sanchez cites simply underscore the idea that, if not construed narrowly, some kidnapping statutes pose a real risk of doubly punishing a defendant who has been charged with both kidnapping and another offense involving some form of detention in its commission. *See, e.g.*, *Alam*, 776 P.2d at 348–49 (holding that Alaska's legislature did not intend its kidnapping statute to be interpreted as broadly as the literal language indicated); *Rich*, 305 N.W.2d at 745 (holding that the terms "confines" and "removes" in the Iowa kidnapping statute require "more than the confinement or removal that is an inherent incident of commission" of the underlying crime).

kidnapping statutes in order to prevent a defendant from being doubly punished, in his words, "limiting their application to situations where the detention or movement is significantly independent of the underlying crime." *See, e.g., People v. Daniels*, 459 P.2d 225, 231–32 (Cal. 1969) (narrowly interpreting California's kidnapping statute to apply only when movement of the victim is more than "incidental to the alleged assault"), *superseded by statute as recognized in People v. Robertson*, 146 Cal. Rptr. 3d 66 (Cal. Ct. App. 2012); *State v. Goodhue*, 2003 VT 85, ¶ 11, 833 A.2d 861 (explaining the development of the "narrowing of the applicability of kidnapping laws").

¶21    We agree with Sanchez that careful interpretation of kidnapping statutes is crucial to prevent two convictions from inappropriately arising out of a single course of conduct. *See State v. Couch*, 635 P.2d 89, 92 (Utah 1981) (observing that "many courts have reassessed kidnaping statutes during the past two decades" and concluding that Utah's narrowly drafted kidnapping statute permits a conviction only if "the kidnaping is not merely incidental or subsidiary to some other crime"). Indeed, our supreme court adopted the *Finlayson* factors for this very purpose—to ensure that the detention supporting a kidnapping conviction has "independent significance" from any detention inherent in the underlying crime so that two convictions do not arise from the same course of conduct. *See State v. Finlayson*, 2000 UT 10, ¶ 23, 994 P.2d 1243 (holding that the detention supporting aggravated kidnapping must have significant independence from the underlying crime because "to hold otherwise would transform virtually every rape and robbery into a kidnaping as well"). But Utah precedent is clear that it is the role of the trial court, not the jury, to apply these factors and to act as the watchman against an unjust outcome by determining whether merger should occur. And Utah precedent is also clear that this process is to take place only after the jury has returned two pertinent convictions. At that point, the jury has decided that the circumstances of the case fulfill the elements of two separate crimes and has necessarily resolved any

questions of fact accordingly. Only then does the question of whether the facts that support the two convictions also require their merger arise. And that kind of determination is one which we traditionally entrust to judges because it requires the exercise of judgment in applying the law to what are by then established facts. Sanchez has not persuaded us that there is any weakness in this approach that justifies a departure from established precedent.

¶22   We therefore conclude that the trial court correctly instructed the jury on the law applicable to aggravated kidnapping and did not err in deciding the issue of merger itself following Sanchez's convictions. We accordingly find no abuse of discretion in the trial court's decision to reject the proposed supplemental jury instruction.

CONCLUSION

¶23   We conclude that merging Sanchez's convictions would be inappropriate under the *Finlayson* factors. We also conclude that the trial court did not abuse its discretion when it refused to send the question of merger to the jury by denying Sanchez's proposed jury instruction. We affirm.

—————————