2018 UT App 18

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JORDAN JEFFERY JACK,
Appellant.

Opinion
No. 20150901-CA
Filed February 1, 2018

Second District Court, Ogden Department
The Honorable Ernest W. Jones
No. 141902101

Rudy J. Bautista and Kelly Ann Booth, Attorneys
for Appellant

Sean D. Reyes and Tera J. Peterson, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which JUDGES
GREGORY K. ORME and RYAN M. HARRIS concurred.

HAGEN, Judge:

¶1 Defendant Jordan Jeffery Jack was convicted of seven counts of exploitation of a vulnerable adult, third degree felonies, *see* Utah Code Ann. § 76-5-111 (LexisNexis 2012), and one count of communications fraud, a second degree felony, *see id.* § 76-10-1801.[1] Jack appeals, arguing that the trial court should have merged his communications fraud conviction into his exploitation of a vulnerable adult convictions under Utah Code

---

1. Jack was also convicted of one count of theft by deception, a class B misdemeanor, *see* Utah Code Ann. § 76-6-405 (LexisNexis 2012), which is unchallenged on appeal.

section 76-1-402(3) and the double jeopardy clauses of the United States and Utah constitutions. *See* U.S. Const. amend. V; Utah Const. art. I, § 12. We affirm.

BACKGROUND[2]

¶2     Jack worked as an associate director for Chrysalis, a business that provides residential services for individuals with traumatic brain injuries and other intellectual, cognitive, and developmental impairments that cause the individuals "to function at levels comparable to those of teenagers, small children and even in some cases infants." To be eligible to receive Chrysalis's residential services, clients must be diagnosed with an intellectual disability, and they must meet the poverty guidelines for Medicaid.

¶3     Residential services consist of group homes—each housing three or four clients—that are staffed twenty-four hours per day. The staff teaches clients "adaptive and habilitative skills" and assists them with daily living activities, such as eating, bathing, dressing, toileting, and ambulating.

¶4     Chrysalis also provides financial support, which includes helping clients apply for Social Security benefits. Because Chrysalis is the representative payee for approximately "90 plus percent" of the clients it serves, the company's representative payee supervisor manages the Social Security funds upon receipt. Initially, clients' funds are deposited into a collective bank account, which the supervisor uses to pay for clients' rent,

---

2. On appeal from a bench trial, we view and recite the evidence in the light most favorable to the trial court's findings; we present additional evidence only as necessary to understand the issues on appeal. *See, e.g.*, *State v. Finlayson*, 2014 UT App 282, ¶ 2 n.4, 362 P.3d 926.

utilities, and personal needs. If there is a remaining balance, those funds are transferred to a pay card that Chrysalis's associate directors may use to pay for the clients' additional expenses, such as groceries, clothing, and entertainment.

¶5　　As an associate director, Jack was "heavily involved" in managing finances for clients who resided in the eight to ten group homes that he oversaw. Jack's duties included, among other things, purchasing items, requesting funds, allocating expenses, and reviewing monthly statements for clients.

¶6　　Each month, Jack would send receipts and a ledger to the area director and the supervisor. The ledger listed the items that he had purchased and allocated those items to the corresponding client. The supervisor then prepared statements to maintain a monthly accounting of each client's balance. Once finalized, the statements were returned to Jack for review. Typically, if there was an error, associate directors notified the area director who, in turn, asked the supervisor to correct the charge and adjust the client's balance. Finalized statements were then distributed to the house managers and the clients' legal guardians.

¶7　　In January 2014, Jack asked an administrative assistant to send the original statements to him to fix before sending the statements to the house managers and the clients' legal guardians. Believing that "something was off" when Jack sent the administrative assistant "corrected" statements, she contacted the area director. After learning that Jack had circumvented Chrysalis's procedure for rectifying errors in statements on several prior occasions, the area director became concerned. He reviewed Jack's new statements, identified several discrepancies, and subsequently notified Chrysalis's CEO. During a joint review, the area director and CEO found multiple discrepancies between the statements that the supervisor had produced and the statements that were sent to the house managers of the group homes that Jack oversaw and to the clients' legal guardians.

¶8    When confronted with the allegations, Jack eventually admitted that he had submitted altered receipts and changed statements to conceal the fact that he had used client funds for his own personal expenses. Among other things, his unlawful purchases included a trip to Las Vegas, concert tickets, multiple televisions, jewelry, and expensive shoes. Jack was charged with seven counts of exploitation of a vulnerable adult, one count of communications fraud, and one count of theft by deception.

¶9    Prior to trial, Jack filed a motion to merge the communications fraud charge into the exploitation of a vulnerable adult charges under Utah Code section 76-1-402(3) and the double jeopardy clauses of the United States and Utah constitutions. The trial court denied the motion, reasoning that there were "elements unique to each of the crimes charged." Specifically, exploitation of a vulnerable adult requires two elements that communications fraud does not—(1) a victim that is "a vulnerable adult based on age and impairment" and (2) a "defendant who is in a position of trust or similar relationship." The trial court also found that Jack's charged conduct did not "constitute a single criminal episode."

¶10    After a bench trial, the trial court found Jack guilty of one count of communications fraud and seven counts of exploitation of a vulnerable adult. Jack again moved to merge his communications fraud conviction into his exploitation of a vulnerable adult convictions, arguing that "communications fraud was the modus operandi by which each exploitation offense was perpetrated." At the sentencing hearing, the trial court denied Jack's motion, noting that it was "critical" that although there were fourteen victims, "the State chose to charge only seven on the exploitation, but all 14 were covered in the communications fraud."

¶11    Jack now appeals the trial court's denial of the motion to merge his convictions.

ISSUE AND STANDARD OF REVIEW

¶12　The only issue on appeal is whether the trial court erred in denying the motion to merge Jack's convictions for communications fraud and exploitation of a vulnerable adult. "Merger is a question of law, which we review for correctness." *State v. Sanchez*, 2015 UT App 27, ¶ 5, 344 P.3d 191.

ANALYSIS

¶13　In arguing that his convictions should have merged at sentencing, Jack refers to both the lesser included offense analysis codified in Utah Code section 76-1-402(3) and to the common law merger doctrine. Although both doctrines flow from the double jeopardy clauses of the state and federal constitutions and "may indeed overlap in certain circumstances, they are analytically distinct." *State v. Kerr*, 2010 UT App 50, ¶ 2 n.1, 228 P.3d 1255.

¶14　On one hand, "where the two crimes are such that the greater cannot be committed without necessarily having committed the lesser, then as a matter of law they stand in the relationship of greater and lesser offenses, and the defendant cannot be convicted or punished for both." *State v. Smith*, 2005 UT 57, ¶ 8, 122 P.3d 615 (citation and internal quotation marks omitted). This analysis "turns on the statutorily defined elements of the two crimes." *State v. Finlayson*, 2000 UT 10, ¶ 16, 994 P.2d 1243. Because the law barring punishment for both a greater and lesser included offenses is codified in Utah Code section 76-1-402(3), we refer to it as statutory merger.

¶15　The Utah Supreme Court has recognized "another conceptually distinct basis for finding that one set of facts may give rise to a merger of two or more separate crimes, despite each crime's unique statutory elements, so as to preclude multiple convictions for essentially the same conduct." *State v.*

*Mecham*, 2000 UT App 247, ¶ 30, 9 P.3d 777 (citation and internal quotation marks omitted). Under this common law merger doctrine, the facts establishing one offense must not be "incidental to" or "inherent in" the other offense and must have "some significance independent of the other crime." *Finlayson*, 2000 UT 10, ¶ 19 (citation and internal quotation marks omitted).

¶16   We conclude that Jack's conviction for communications fraud does not merge into his convictions for exploitation of a vulnerable adult under either statutory or common law merger. We analyze each doctrine in turn.

## I. Statutory Merger

¶17   Jack contends that, under the Utah merger statute, his conviction for communications fraud must merge with his convictions for exploitation of a vulnerable adult because "both offenses are triggered by the same facts and established by the same proof at trial." In response, the State contends that the statutes' "unique elements" preclude the conclusion that either statute is a lesser included offense of the other. We agree with the State that because the two crimes have distinct statutory elements, neither crime is a lesser included offense of the other.

¶18   "A defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense." Utah Code Ann. § 76-1-402(3) (LexisNexis 2012). The statute lists several circumstances in which an offense will be deemed to be a lesser included offense,[3]

---

3. Under Utah Code section 76-1-402(3)(b), an offense may also be included when "[i]t constitutes an attempt, solicitation, conspiracy, or form of preparation to commit the offense charged." Although Jack contends that communications fraud is a "form of" exploitation of a vulnerable adult, he inadequately briefs this issue. *See* Utah R. App. P. 24(a)(8). "[A]n issue is

(continued…)

including when an offense "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." *Id.* § 76-1-402(3)(a). But "[t]he Utah Supreme Court has made it abundantly clear . . . that section 76-1-402 never applies to merge crimes that have distinct statutory elements." *State v. Mecham*, 2000 UT App 247, ¶ 29, 9 P.3d 777; *see also State v. Finlayson*, 2000 UT 10, ¶ 16, 994 P.2d 1243 ("[W]hether one crime is a lesser included offense of a greater crime under section 76-1-402, turns on the statutorily defined elements of the two crimes."). Accordingly, we begin our analysis by comparing the statutory elements of communications fraud and exploitation of a vulnerable adult.

¶19 To convict Jack of felony communications fraud, the State had to prove beyond a reasonable doubt that Jack

> [1] devised any scheme or artifice to defraud another or to obtain from another money, property, or anything of value [2] by means of false or fraudulent pretenses, representations, promises, or material omissions, and . . . [3] communicate[d] directly or indirectly with any person [4] by any means for the purpose of executing or concealing the scheme or artifice.

---

(…continued)

inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *See State v. MacNeill*, 2017 UT App 48, ¶ 83, 397 P.3d 626 (citation and internal quotation marks omitted). Because Jack fails to provide any reasoned analysis explaining how communications fraud is a form of preparation to commit the crime of exploitation of a vulnerable adult, we decline to further address this issue.

Utah Code Ann. § 76-10-1801(1). Further, communications fraud is a second degree felony "when the value of the property, money, or thing obtained or sought to be obtained is or exceeds $5,000." *Id.* § 76-10-1801(1)(d).

¶20    On the other hand, a person is guilty of exploitation of a vulnerable adult when that person

> [1] is in a position of trust and confidence, or has a business relationship, with the vulnerable adult or has undue influence over the vulnerable adult and [2] knowingly, [3] by deception or intimidation, [4] obtains or uses, or endeavors to obtain or use, [5] the vulnerable adult's funds, credit, assets, or other property [6] with the intent to temporarily or permanently deprive the vulnerable adult of the use, benefit, or possession of the adult's property, [7] for the benefit of someone other than the vulnerable adult.[4]

*Id.* § 76-5-111(4)(a)(i).

¶21    Jack concedes that exploitation of a vulnerable adult cannot be construed as a lesser included offense of communications fraud, because it requires at least two additional statutory elements that communications fraud does

---

4. Because the State charged only one variant of exploitation of a vulnerable adult, it is unnecessary for us to look beyond the statutory elements to the facts to determine which variation was proved at trial. *See State v. Ross*, 951 P.2d 236, 241 (Utah Ct. App. 1997) ("[W]here the two crimes have multiple variations, we must look beyond the statutory elements and consider the evidence to determine whether the greater-lesser relationship exists between the specific variations of the crimes actually proved at trial." (citation and internal quotation marks omitted)).

not: (1) that the property must belong to a vulnerable adult and (2) that the defendant must be in a position of trust and confidence or in a business relationship. Instead, Jack contends that communications fraud is a lesser included offense of exploitation of a vulnerable adult. Even assuming that a more serious offense can merge into a lesser offense,[5] the crimes in the present case do not merge because communications fraud contains at least two distinct statutory elements beyond what is required for exploitation of a vulnerable adult. Unlike exploitation of a vulnerable adult, communications fraud requires a scheme or artifice to defraud and a direct or indirect communication with any person for the purpose of executing or concealing the scheme or artifice. Thus, because exploitation of a vulnerable adult can be committed without necessarily having committed communications fraud, the two crimes do not stand in a relationship of greater and lesser offenses and therefore do not merge under Utah Code section 76-1-402(3). *See State v. Smith*, 2005 UT 57, ¶ 8, 122 P.3d 615.

## II. Common Law Merger

¶22    Even if statutory merger does not apply, Jack contends that the common law merger doctrine requires merger of his

---

5. Jack alleges that merging the greater offense, a second degree felony, with the lesser offenses, third degree felonies, would not be "without precedent." He cites *State v. Lopez*, 2004 UT App 410, 103 P.3d 153, where we noted that the trial court presumably would have merged the greater offense into the lesser offense—a departure from the general application of the merger doctrine. *Id.* ¶ 9 n.1. Because the case was remanded, however, the court did not address whether that would be a permissible application of Utah Code section 76-1-402(3). Likewise, because we can resolve the present case on other grounds, it is unnecessary for us to reach that issue here.

convictions for communications fraud and exploitation of a vulnerable adult. Specifically, Jack alleges that because "the commission of communications fraud was inherent in each and every commission of exploitation of a vulnerable adult," we would be punishing him multiple times for the same conduct. We disagree.

¶23   "The motivating principle behind the [common law] merger doctrine is to prevent violations of constitutional double jeopardy protection," *State v. Calvert*, 2017 UT App 212, ¶ 24, 407 P.3d 1098 (citation and internal quotation marks omitted), and to avoid convicting and punishing defendants multiple times for essentially the same conduct, *State v. Sanchez*, 2015 UT App 27, ¶ 8, 344 P.3d 191. This doctrine "is most commonly applied to situations involving a defendant who has been charged with committing both a violent crime, in which a detention is inherent, and the crime of kidnaping based solely on the detention necessary to the commission of the companion crime." *State v. Kerr*, 2010 UT App 50, ¶ 2 n.1., 228 P.3d 1255 (citation and internal quotation marks omitted).

¶24   To address such factual scenarios, the Utah Supreme Court adopted a three-part test, which states:

> [I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnaping[,] the resulting movement or confinement:
>
>> (a) Must not be slight, inconsequential and merely incidental to the other crime;
>>
>> (b) Must not be of the kind inherent in the nature of the other crime; and
>>
>> (c) Must have some significance independent of the other crime in that it makes the other

crime substantially easier of commission or substantially lessens the risk of detection.

*State v. Finlayson*, 2000 UT 10, ¶ 23, 994 P.2d 1243 (alteration in original) (citation and internal quotation marks omitted).

¶25    Relying on *State v. Zaragoza*, 2012 UT App 268, 287 P.3d 510, Jack contends that "the commission of communications fraud was inherent in each and every commission of exploitation of a vulnerable adult, and is not 'independent of and not merely incidental to' the exploitation offenses." (Quoting *id.* ¶ 6). But he makes no attempt to explicitly lay out the three-part test and has not identified any cases that apply the *Finlayson* factors to charges other than kidnapping, rape, aggravated assault, and aggravated robbery, all of which focus on the extent of the victim's detention.

¶26    Even assuming that the *Finlayson* factors are applicable to communications fraud and exploitation of a vulnerable adult, we nevertheless remain unconvinced that Jack's convictions should merge under this doctrine. Jack's convictions for exploitation of a vulnerable adult were supported by evidence that he made various unauthorized purchases for himself. On the other hand, his conviction for communications fraud was supported by evidence that Jack had altered numerous receipts and statements. Because Jack could have made the unauthorized purchases—thereby satisfying the elements of exploitation of a vulnerable adult—without concealing the unauthorized purchases through communications fraud, the conduct required to commit the two crimes was distinct. Creating false receipts and statements was not inherent in the crime of exploitation of a vulnerable adult. The false communications had independent significance in that those communications made it easier for him to continue exploiting the vulnerable adults without detection. *See State v. Lee*, 2006 UT 5, ¶ 34, 128 P.3d 1179 (reasoning that aggravated kidnapping carried significance independent of

aggravated assault where dragging the victim into an alley substantially lessened the risk of detection).

¶27   Even if we accept Jack's argument that the concealment was inherent in exploitation of a vulnerable adult, the communications fraud conviction remains supported by independent evidence. Jack was charged with and convicted of exploiting only seven of the fourteen vulnerable adults. However, the State included all fourteen vulnerable adults in the one count of communications fraud. At trial, the State presented separate evidence relating to the additional seven victims that independently supported Jack's conviction for communications fraud. Because there was some significant factual independence between communications fraud and exploitation of a vulnerable adult, the trial court did not err in denying Jack's motion to merge offenses.

CONCLUSION

¶28   We conclude that communications fraud is not a lesser included offense of exploitation of a vulnerable adult under statutory merger because both offenses contain unique statutory elements. Additionally, the common law merger doctrine does not apply in this case because Jack's conduct in concealing the crime of exploitation of a vulnerable adult by forging receipts and altering statements independently supported the communications fraud conviction. Furthermore, the communications fraud conviction encompassed conduct toward seven additional victims that separately support the communications fraud charge.

¶29   Affirmed.

_____