2014 UT App 32

**STATE of Utah, Plaintiff and Appellee,**

v.

**Mike S. STIDHAM, Defendant and Appellant.**

**No. 20110540–CA.**

Court of Appeals of Utah.

Feb. 13, 2014.

---

Gregory G. Skordas and Rebecca Hyde Skordas, Attorneys for Appellant.

Sean D. Reyes and Kris C. Leonard, Attorneys for Appellee.

Judge GREGORY K. ORME authored this Opinion, in which Judges CAROLYN B. McHUGH and STEPHEN L. ROTH concurred.

Opinion

ORME, Judge:

¶ 1 Defendant Mike S. Stidham appeals the denial of his motion for a new trial following his conviction for simple assault with an in-concert enhancement, a third degree felony. *See* Utah Code Ann. § 76–5–102 (LexisNexis 2012); *id.* § 76–3–203.1.[1] Defendant contends that the trial court erred in denying his motion for a new trial because his trial counsel had a conflict of interest, he received ineffective assistance of counsel, and sufficient evidence had emerged after his conviction to justify a new trial. We conclude that the contentions are well enough taken to warrant an evidentiary hearing, and we remand for that purpose.

## BACKGROUND

¶ 2 Defendant and two friends (Codefendant and Friend, respectively) went to an "adult entertainment" club in Salt Lake City. While at the club, Defendant and his friends were approached by a bouncer. Defendant claims that the bouncer came to their table looking to provoke a fight with the group. The bouncer, however, testified that he approached the table to address the group's unruly behavior. Regardless of the bouncer's motivation for confronting the group, Codefendant responded by telling the bouncer to get some beers for the group. The bouncer responded, "Fuck you, just be respectful to the dancers." Defendant testified that his group got up to leave after the confrontation. The bouncer testified that Defendant's friends challenged him to a fight and that he agreed, hoping to get the men outside but not actually intending to engage in fisticuffs.

¶ 3 As the group headed for the exit, the bouncer called for another bouncer, and Friend yelled for his girlfriend (Girlfriend) to get the car. According to the bouncer's testimony, Codefendant, who was walking in front of him, knocked into him. The bouncer testified that he took a step back from Codefendant and turned to find Defendant right behind him. The bouncer admitted that he reacted by pushing Defendant away. Defendant claimed that he then put the bouncer in a headlock and brought him to the ground, while the bouncer testified that Defendant punched him in the face. A melee ensued, which a witness described as "a big pile," with other patrons and employees joining the fray, screaming, yelling, or calling 911. The bouncer received multiple blows during the chaos and suffered a broken nose, a fractured eye socket, and damage to his knee, teeth, and head. Defendant sustained a head injury and believed he had been cut with a sharp object during the fight.

¶ 4 Defendant, Friend, and Codefendant eventually exited the club. Girlfriend was waiting outside in a car. Friend got into that car, and Defendant and Codefendant left in a truck. Police responded to multiple calls about the fight and stopped the truck soon after. As an officer approached the truck, he saw blood on Defendant's face and hands. Defendant told the officer, "Well, the bouncer put his hands on me so I beat him up."

¶ 5 Defendant, Codefendant, and Friend were charged with simple assault for their involvement in the fight. Defendant and Codefendant retained the same counsel for their defense. At hearings and appearances throughout the case, the trial court repeatedly asked trial counsel if there was a conflict in his representation of both clients. Each time, trial counsel stated that there was no conflict.

¶ 6 On the morning of trial, Codefendant accepted a plea bargain, pleading guilty to assault, a class A misdemeanor.[2] Trial counsel then met with both Defendant and Codefendant. Codefendant expressed a desire to testify for Defendant, but trial counsel was

1. Because the provisions in effect at the relevant time do not differ in any way material to our analysis from the statutory provisions now in effect, we cite the current version of the Utah Code as a convenience to the reader.

2. Assault is ordinarily a class B misdemeanor, but it becomes a class A misdemeanor if, inter alia, the victim sustains substantial bodily injury. *See* Utah Code Ann. § 76–5–102 (LexisNexis 2012). Assault becomes a third degree felony, as in Defendant's case, if the offense would have been a class A misdemeanor but was also committed in concert with two or more persons. *See id.* § 76–3–203.1.

concerned that his doing so might negatively affect Codefendant's later sentencing by the same judge. As a result, trial counsel decided not to call Codefendant as a witness in Defendant's trial.

¶ 7 At Defendant's trial, which was a bench trial, the State called the bouncer and two other employees from the club. The two other employees confirmed the bouncer's version of events, i.e., the testimony of the three was cumulative. The State also called the police officer who arrested Defendant after the fight. Defendant was the only witness called by his trial counsel. Defendant testified that the bouncer initiated the fight and was the aggressor throughout the altercation. Following the bench trial, Defendant was found guilty of felony assault. Defendant later retained his present counsel.

¶ 8 After Defendant's conviction, he was approached at a sporting event by a man (Witness) he did not know but who recognized Defendant and explained that he had been present during the melee. Witness said that he believed that Defendant and Codefendant were the victims and that he had seen the bouncers attack Defendant and his friends. Witness told Defendant that, after Defendant's group departed, he had seen the bouncers "compare notes in an attempt to get their story straight before the police arrived."

¶ 9 Defendant's current counsel contacted Girlfriend, who corroborated Witness's statement that the bouncer had been the aggressor. Girlfriend stated that the bouncer had asked the group to leave because they were "not tipping the dancers enough" and that he seemed "intent on starting a fight from the very beginning because he was taking off his watch as he approached their table." Girlfriend said that, after the skirmish started, she witnessed a number of patrons and bouncers jumping into the fray, with the total number of combatants reaching between ten and fifteen people.

¶ 10 Following his conviction, Defendant was sentenced to thirty days in the Salt Lake County jail and ordered to complete seventy hours of community service. On the same day as his sentencing, Defendant moved for a new trial, arguing that he had received inef-

fective assistance of counsel and that new evidence warranted a new trial. Defendant's motion was supported with affidavits from his trial counsel, Girlfriend, and Witness.

¶ 11 In addressing Defendant's motion for a new trial, the court stated that there was no conflict of interest and emphasized that Defendant's trial counsel had consistently informed the court throughout the litigation that there was no conflict in his representation of both Defendant and Codefendant. The court also indicated that it believed the claimed conflict to be an "artificial conflict" created after the fact. The court expressed its belief that "[trial counsel] was, if anything, not aggressively representing ... [Codefendant]. His focus, clearly, was on [Defendant]."

¶ 12 The court recalled that Codefendant seemed willing to testify at Defendant's trial and that he was not excused until it was confirmed that he would not be called as a witness. The court referred to statements by Codefendant at his sentencing hearing, at which trial counsel failed to appear. At the sentencing hearing, Codefendant said that he was "just along for the ride" and that counsel's "concerns were toward [Defendant]." Consequently, the court indicated that it did not believe that there was a conflict—at least not one that prejudiced Defendant—and that Defendant's contentions had "no persuasive value."

¶ 13 With regard to the affidavits from Witness and Girlfriend, the court concluded that their testimony would be merely cumulative of Defendant's trial testimony. Concerning Girlfriend's testimony, the court stated, "It was not ineffective counsel, there are—she was clearly a girlfriend, she was there, she was available, she was here. Her theory of the case was absolutely consistent with the theory that was repeatedly presented." In addressing Witness's potential testimony, the court said that

he doesn't bring anything new, including the fact that the bouncers got their story together. That, again, was the theory of the defense throughout, was that the bouncers were the aggressors, they were working together, they were hanging, they

were all protecting the dancers and the other employees and that [they] were all in cahoots, together.

The court also indicated that Girlfriend and Witness both had credibility issues such that a competent attorney may have properly decided not to call them as witnesses at trial even if fully aware of their intended testimony.[3] Accordingly, the court denied Defendant's motion for a new trial, and Defendant appeals the denial of that motion.

## ISSUES AND STANDARDS OF REVIEW

¶ 14 Defendant argues that the trial court erred in denying his motion for a new trial. The denial of a motion for a new trial is reviewed under an abuse of discretion standard. *See State v. Lenkart*, 2011 UT 27, ¶ 20, 262 P.3d 1.

¶ 15 Defendant also contends that his trial counsel was ineffective. When reviewing a trial court's ruling on ineffective assistance of counsel claims, we utilize a mixed standard of review. "We review the trial court's application of the law to the facts under a correctness standard. If there are factual findings to review, we will not set them aside unless they are clearly erroneous." *Id.* (citation omitted).

## ANALYSIS

¶ 16 Defendant's motion appears to have merit. In our view, the trial court should not have decided the motion based only on affidavits and argument. Under all the circumstances, the trial court should have conducted an evidentiary hearing to more fully evaluate Defendant's contentions before ruling on his motion for a new trial. The trial

court's disinclination to hold such a hearing in light of the facts of this case was not consistent with the sound exercise of discretion.

I. The Trial Court Should Have More Fully Considered Whether a Conflict of Interest Had Arisen in Trial Counsel's Joint Representation of Defendant and Codefendant.

¶ 17 Defendant argues that although his trial counsel did not originally have a conflict of interest in representing both him and Codefendant, a conflict arose after Codefendant accepted a plea deal. Defendant claims that trial counsel then declined to call Codefendant to testify as a witness for Defendant because of counsel's conflicting obligations to Codefendant. Defendant maintains, and his trial counsel's affidavit supports the contention, that Codefendant "wanted to testify on behalf of [Defendant] at his trial" but that counsel "had concerns that [Codefendant]'s demeanor might be perceived as too aggressive if he testified before the Judge that would ultimately sentence him" soon after. Defendant argues that "[b]ecause of these concerns [his trial counsel] did not call [Codefendant] as a witness in [Defendant]'s trial."[4]

¶ 18 A defendant claiming he received ineffective assistance in violation of the Sixth Amendment bears the heavy burden of demonstrating that (1) trial counsel rendered deficient performance that "fell below an objective standard of reasonableness" and (2) defendant was "prejudiced" by the deficient performance of trial counsel.[5] *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

---

3. Girlfriend's bias is self-evident. But the court's theory of Witness's lack of credibility is problematic. The court's stated concern was that Witness came forward well after trial. It is undisputed, however, that Witness did so only upon the occurrence of a chance encounter with Defendant, with whom Witness was not previously acquainted.

4. Codefendant did not submit an affidavit concerning what his testimony would have been, nor was it otherwise proffered. In the posture of this appeal, however, this lack is of no consequence. If an actual conflict existed, as claimed, and the

conflict impacted counsel's decision not to call Codefendant, prejudice is presumed and need not be shown, as more fully explained in this opinion. *See infra* note 5 & ¶ 19.

5. In conducting an analysis of an ineffectiveness claim premised on a conflict of interest, however, we presume prejudice if the defendant demonstrates there was "an actual conflict of interest [that] adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). *Accord Mickens v. Taylor*, 535 U.S. 162, 166–68, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002).

The defendant must demonstrate that a conflict of interest existed by establishing that his trial counsel "was required to make a choice advancing his own interests to the detriment of his client's interests." *United States v. Horton,* 845 F.2d 1414, 1419 (7th Cir.1988). "To show that the alleged conflict adversely affected trial counsel's performance, Defendant must establish that '(1) other counsel likely would have approached the case differently and (2) a tactical reason other than the alleged conflict [did not] exist[ ] for [counsel's] decisions.' " *State v. Person,* 2006 UT App 288, ¶ 17, 140 P.3d 584 (alterations in original) (quoting *State v. Lovell,* 1999 UT 40, ¶ 24, 984 P.2d 382).

¶ 19 However, the United States Supreme Court has held that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Cuyler v. Sullivan,* 446 U.S. 335, 349–50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (internal citation omitted). *Accord State v. Brandley,* 972 P.2d 78, 85 (Utah Ct.App.1998) ("[W]hen an ineffectiveness claim is grounded on a conflict of interest, we presume prejudice if the defendant demonstrates that an actual conflict of interest adversely affected his lawyer's performance.") (citations and internal quotation marks omitted); *State v. Johnson,* 823 P.2d 484, 488 (Utah Ct.App.1991) ("If the defendant makes such a showing, prejudice need not be demonstrated to prevail on the claim. The court will presume the defendant was prejudiced by the lawyer's performance.") (internal citation omitted).

¶ 20 Defendant claims that his trial counsel's dual representation created an actual conflict of interest that detrimentally affected Defendant's trial "because it prevented counsel from calling [Codefendant] as a witness." And trial counsel's affidavit supports this position. The trial court, however, rejected Defendant's argument that there was a conflict, stating:

That is so fully contrary to everything I observed and everything that was placed on the record by [trial counsel] when he was an attorney of record and was an officer of the court that I can only conclude that it is an after-the-fact contrivance to create an artificial conflict. And it is so totally contrary to everything on the record that I simply do not believe that [trial counsel] actually ever took that position and it is not persuasive as an affidavit, because to believe a sworn affidavit, which I tend to do, a sworn affidavit is for that very purpose, I would have to disbelieve the statements of counsel.... [A]s far as the validity, the believability of [trial counsel's] sworn statement after the fact, I give it none and it has no persuasive value for me.

The trial court relied on the fact that trial counsel was repeatedly asked throughout the case whether there was a conflict in his representation of both defendants. While the court ultimately referred to this as the basis for not believing counsel's affidavit about the claimed conflict, the fact that the court previously and repeatedly felt the need to inquire about the possibility of a conflict suggests the court's contemporaneous recognition of the distinct possibility that a conflict existed or could arise. The court's conclusion that trial counsel's affidavit was "an after-the-fact contrivance" may be true, but it seems just as likely that the court's earlier instincts were correct, namely that there was a conflict, and that it was trial counsel's earlier claims to the contrary that were the "contrivance," or at least that his judgment was colored by his own interest in continuing to represent both clients. We believe that the trial court could have resolved this discrepancy only upon hearing the live testimony of trial counsel, Defendant, and Codefendant, with the opportunity for probing inquiry by the court and cross-examination by counsel for the State.

¶ 21 The trial court went on to say that even presuming a conflict existed, the court would "still need to consider whether or not it prejudiced [Defendant]." The court then found that it did not. In so ruling, the court overlooked the rule that in the event of an actual conflict prejudice is presumed under *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), and its

progeny.[6]

¶ 22 The interests of justice would have been better served had the court considered Defendant's motion for a new trial not just on the paper record but, given its plausibility and serious implications, through an evidentiary hearing. After such a hearing the court could then properly determine, inter alia, whether a conflict of interest existed that caused Defendant's trial counsel not to call Codefendant. The court had obviously been sensitive to the fact that there was a potential conflict given that Defendant and Codefendant were represented by the same attorney, and the possibility that such a conflict may have ripened warranted fuller consideration through an evidentiary hearing—especially given trial counsel's sworn statement suggesting that a key decision he made in the handling of Defendant's case was influenced by his concern about the impact Codefendant's testifying for Defendant might have at Codefendant's sentencing.

## II. The Trial Court Should Have Conducted an Evidentiary Hearing to More Fully Evaluate Whether Trial Counsel Was Ineffective.

¶ 23 As explained in Section I of this opinion, if the trial court concludes on remand that there was an actual conflict that affected the soundness of trial counsel's judgment, Defendant is entitled to a new trial because prejudice is then presumed. But if the trial court does not find that a conflict existed, it must consider whether a new trial is nonetheless appropriate, and this will entail deciding, inter alia, whether trial counsel's failure to call Girlfriend and Codefendant constituted deficient performance *and* whether any such deficiency resulted in prejudice to Defendant.

### A. Girlfriend's Testimony

¶ 24 The trial court rejected Defendant's claim that his trial counsel's failure to call Girlfriend at trial constituted ineffective assistance of counsel. The Utah Supreme Court has held that

> [i]f counsel does not adequately investigate the underlying facts of a case, including the availability of prospective defense witnesses, counsel's performance cannot fall within the "wide range of reasonable professional assistance." This is because a decision not to investigate cannot be considered a tactical decision. It is only after an adequate inquiry has been made that counsel can make a reasonable decision to call or not to call particular witnesses for tactical reasons.

*State v. Templin,* 805 P.2d 182, 188 (Utah 1990) (footnote omitted) (quoting *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). While Girlfriend was present throughout the course of the litigation and trial counsel was aware that she had been at the club on the night in question, trial counsel did not call her as a witness for Defendant.

¶ 25 The trial court rejected the necessity of Girlfriend's testimony because "[h]er theory of the case was absolutely consistent with the theory that was repeatedly presented." But the fact that the State was able to present multiple "cumulative" accounts in support of its theory of the case while Defendant was the only witness in his own defense suggests that Girlfriend's testimony may have helped tip the balance back in Defendant's favor. That Girlfriend's testimony, even if subject to impeachment for bias,[7] matched Defendant's testimony might well have given more credence to his theory of the case. In reconsidering the motion for new trial, the trial court should hear and evaluate Girlfriend's live testimony and make a more informed judgment about the likelihood that trial counsel's decision not to call Girlfriend was deficient and prejudiced Defendant.

---

6. The trial court may well be right that, on balance, trial counsel need not have been concerned that Codefendant's testimony at trial would have impacted his sentence. The problem, of course, is that trial counsel claims to have concluded otherwise, and his analysis may well have been tainted by his conflict of interest in representing both Defendant and Codefendant.

7. As previously noted, *see infra* ¶¶ 7, 25, the State's evidence from multiple witnesses was cumulative. Still, other bouncers were called to testify in support of a common version of events. The bias explained by the camaraderie among the bouncers is not qualitatively unlike Girlfriend's favorable disposition toward Defendant.

## B. Codefendant's Testimony

¶ 26 Additionally, even if on remand the trial court concludes that there was no actual conflict that tainted trial counsel's judgment in representing both Defendant and Codefendant, it still may be that counsel's decision not to call Codefendant was ineffective. The trial court should have more fully considered Codefendant's likely testimony regarding what transpired at the club on the night in question. The court should have taken testimony from Codefendant about what his testimony would have been had he been called at trial and from trial counsel about why Codefendant was not called if that is not obvious from what Codefendant says his testimony would have been. If the court determines that it was deficient not to call Codefendant, then the court must evaluate whether the exclusion of Codefendant's testimony was prejudicial.

## III. The Trial Court Should Have Conducted an Evidentiary Hearing to More Fully Evaluate Whether Defendant's New Evidence Warranted a New Trial.

■ ¶ 27 In ruling on Defendant's motion for a new trial, the trial court should have heard the live testimony of Witness. The court disregarded his testimony because,

> again, [Witness] doesn't bring anything new, including the fact that the bouncers got their story together. That, again, was the theory of the defense throughout, was that the bouncers were the aggressors, they were working together, they were hanging, they were all protecting the dancers and the other employees and that [they] were all in cahoots, together. That position was presented fully, aggressively, appropriately....

While Witness was not known at the time of trial and thus the failure to call him does not implicate Defendant's right to effective assistance by trial counsel, the trial court should have held an evidentiary hearing to allow Defendant a chance to present Witness's testimony so that the court could more fully consider whether the evidence met the requirements of *State v. James*, 819 P.2d 781 (Utah 1991).

■ ¶ 28 For a new trial to be ordered, *James* requires that the evidence

> (1) ... must be such as could not with reasonable diligence have been discovered and produced at the trial; (2) it must not be *merely* cumulative; (3) it must be such as to render a different result probable on the retrial of the case.

*Id.* at 793 (emphasis added) (citation and internal quotation marks omitted). In light of the circumstances of this case—in which Defendant was tried by the court rather than by a jury—the trial court was in a unique position to determine whether Defendant's proffered evidence met the requirements of James. But to meaningfully evaluate the motion for a new trial, Defendant should be afforded the opportunity to fully present his new evidence to the trial court rather than have the court pass on its credibility with reference only to Witness's affidavit.

¶ 29 While the court perceived "significant" credibility issues with Witness, which seem far from compelling, *see supra* note 3, and noted that the testimony mirrored Defendant's, the court should have heard Witness's actual testimony in determining whether a new trial should be ordered. Witness, arguably the most neutral observer of the events as they unfolded if his testimony is credible, seems to be in a unique position to testify about what happened during and after the fight. That he came forward of his own accord and had no prior affiliation with Defendant, if true, would lend considerable credence to his account, making it qualitatively much more important than testimony that is "merely cumulative." If believed, Witness's testimony might well create reasonable doubt about Defendant's guilt. In any event, the evidence was such that it warranted fuller consideration by the trial court.

¶ 30 In hearing the new evidence that Witness presents, the trial court must bear in mind that the State was granted the opportunity to present multiple witnesses, whose testimony was cumulative in every sense of that term, in support of its theory of the case. While the trial court noted that the new evidence is "absolutely consistent with the theory that was repeatedly presented," this perspective does not take into account

that only Defendant testified in his own behalf and that his obvious self-interest may well have weakened the strength of his testimony in the trial court's eyes. The new evidence cannot be dismissed as "merely cumulative" when it might help settle the balance in what amounted to a credibility determination between Defendant's sole testimony and that of the State's many witnesses.

## CONCLUSION

¶ 31 We reverse and remand for the trial court to conduct an evidentiary hearing in conjunction with Defendant's motion for a new trial. Upon hearing all the evidence, if the trial court concludes that the motion is well taken, Defendant is entitled to a new trial.