**2016 UT App 210**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
PERCY L. WILDER,
Appellant.

Opinion
No. 20140416-CA
Filed October 20, 2016

Second District Court, Ogden Department
The Honorable Mark R. DeCaria
No. 131900362

Samuel P. Newton, Attorney for Appellant

Sean D. Reyes and Christopher D. Ballard, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGE
STEPHEN L. ROTH and SENIOR JUDGE RUSSELL W. BENCH
concurred.[1]

ORME, Judge:

¶1    Defendant Percy L. Wilder appeals his convictions for
aggravated kidnapping and aggravated sexual assault, both first
degree felonies. Defendant challenges the sufficiency of the
evidence supporting his aggravated kidnapping conviction and
alleges that he received ineffective assistance of counsel when
his trial counsel failed to argue that the aggravated kidnapping
charge merged with the aggravated sexual assault charge.

---

1. Senior Judge Russell W. Bench sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

He also claims that the trial court erred when it denied his request for a post-trial evidentiary hearing to question an allegedly biased juror. We affirm.

BACKGROUND[2]

¶2    Defendant and the victim separately attended a party at the home of a mutual acquaintance. Around 1:30 a.m., Defendant asked the victim if she would go outside to talk to him. She told him no—multiple times. But eventually the victim went out to her car to get her cellphone, and Defendant followed her. Once outside, Defendant continued to ask the victim to talk, but she declined, saying she was cold and needed to get back to the party. Nonetheless, Defendant opened the driver-side door of his car and asked the victim to sit down. Hoping he would leave her alone if she spoke with him, the victim sat down on the edge of the driver-side seat. Defendant then asked her to move over, and when she did not, he sat down anyway. So she moved into the passenger seat, opened the passenger-side door, and hung one foot out the door.

¶3    While the victim's leg was still outside the car, Defendant started the car and began driving. Fearful that she would be run over if she tried to escape, the victim remained in the car and closed the door. She did, however, ask Defendant to stop. Defendant told the victim that he was going to give a friend a ride, but he did not pick up a friend. Instead—of all things—he began repeatedly asking her for oral sex, a request that she steadfastly refused.

---

2. "In reviewing a jury verdict, we view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict. We recite the facts accordingly." *State v. Hamilton*, 827 P.2d 232, 233–34 (Utah 1992) (internal citations omitted).

¶4 At around 2:00 a.m., after having driven a short distance, Defendant parked in the back of an apartment complex parking lot. There were no other people in the lot. Defendant then demanded that the victim undress and give him oral sex. Defendant became enraged when the victim refused, and he threatened to "cut [her]" if she got out of the car. Defendant next tried to put his hand up the victim's shirt, but the victim pushed him away. He reacted by reaching across her and biting her right breast through her clothing.

¶5 To enhance her mobility, the victim removed her high-heeled shoes. Defendant interpreted this, however, as her beginning to undress, and he ordered her to proceed. When she did not, he threatened to "gut [her] from head to toe" if she did not immediately undress. Instead, the victim opened the car door and jumped out. Defendant grabbed the back of her pants, but she broke free of his grasp. The victim testified at trial that she had been in Defendant's parked car for approximately ten minutes.

¶6 Free of Defendant, the victim ran into the apartment complex, where she pounded on doors and screamed for help. Defendant ran after her, and when he reached her, he grabbed her by the hair and began dragging her back toward his car. According to the victim's estimate, he did this for about ten seconds, and they traveled only about two steps. The victim then was able to lock her legs and brace herself between the hallway walls. In response, Defendant punched her in the face and then released her. Defendant fled, and the victim sought help. Residents heard the victim and came to her aid, and she called 911 and reported the incident. Following his apprehension, the State charged Defendant with one count each of aggravated kidnapping and aggravated sexual assault. Following a jury trial, Defendant was convicted of both charges.

¶7 Sometime after trial but before sentencing, Defendant's daughter remembered that one of the jurors (Juror) had attended

junior high school with her brothers, Defendant's sons. Both Defendant and the State interviewed Juror. Defendant moved the trial court to arrest the verdict, asserting that Juror knew Defendant's children and was biased against him.[3] In this motion, Defendant also alleged that Juror remained in the courtroom for improper reasons after the jury had been dismissed. The State countered that Juror remained in the courtroom only to ask about his payment for jury service.

¶8     The State subsequently submitted its taped interview with Juror as evidence that he was not biased. In the interview, Juror admitted to the State's investigator that he briefly attended Defendant's sons' junior high school and that he knew one of the sons in junior high, but Juror also said he had not remembered the connection until after trial because he attended multiple

---

3. Defendant initially captioned his motion as a motion to arrest the verdict. The State argued in its opposition brief that the court should deny the motion because it presented new evidence, which a rule 23 motion to arrest the verdict does not permit. *See* Utah R. Crim. P. 23 (permitting the court "to arrest judgment if the facts proved or admitted did not constitute a public offense"). The State argued that such a motion typically is used to challenge the sufficiency of the evidence at trial while a rule 24 motion for new trial is the proper way to challenge juror misconduct. *See id.* R. 24(a) (permitting the court to "grant a new trial in the interest of justice if there is any error or impropriety which had a substantial adverse effect upon the rights of a party"). In reply, Defendant asked the court to treat his motion as one for a new trial. The record of the four hearings on the motion does not show that the court directly addressed the issue, but the court proceeded as if the motion were one for a new trial and denied the motion for lack of evidence—not for procedural reasons. Accordingly, we treat Defendant's motion to arrest the verdict as if it were a rule 24 motion for new trial.

junior highs. He also claimed that he did not know Defendant's daughter and that he was unaware of any aspect of Defendant's circumstances prior to trial.

¶9     Although Defendant's counsel had interviewed Juror, Defendant proffered no evidence showing that Juror's account, as submitted by the State, was false or demonstrating Juror's bias. Instead, Defendant insisted that Juror had in fact attended school with Defendant's sons for three years, claiming that Juror appeared in the school's yearbook each of those years.[4] But Defendant never presented the yearbooks as evidence. The court decided that it would watch the State's interview video and make its decision. After a period of more than three months, during which time the court held four hearings, the court denied Defendant's request for an evidentiary hearing, concluding that there was insufficient information to warrant further inquiry.

¶10    After denying Defendant's motion for a new trial, the court sentenced Defendant to two sentences of fifteen years to life in prison, to be served concurrently with one another but consecutively to a sentence Defendant was already serving on an unrelated conviction. Defendant appeals.

ISSUES AND STANDARDS OF REVIEW

¶11    Defendant raises three issues on appeal. First, he asserts that the trial court abused its discretion when it denied his request for an evidentiary hearing in which Juror could be called

---

4. Even if Juror appeared in all three yearbooks, that would not necessarily be inconsistent with his claim that he attended multiple junior high schools. He might have enrolled during the first year and departed during the third, for example, or he might have divided all three school years between his parents' households in varying school districts.

to testify. We review the trial court's denial of an evidentiary hearing, and, therefore, of the motion for new trial, for an abuse of discretion. *See State v. Loose*, 2000 UT 11, ¶ 16, 994 P.2d 1237. "[L]egal determinations made by the trial court as a basis for its denial of a new trial motion are reviewed for correctness." *Id.* ¶ 8.

¶12 Second, Defendant argues that there was insufficient evidence to convict him of aggravated kidnapping. "In reviewing sufficiency of the evidence claims, we reverse a jury verdict only when the evidence 'is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt.' . . . We examine the evidence in a light most favorable to the verdict." *State v. Boss*, 2005 UT App 520, ¶ 9, 127 P.3d 1236 (quoting *State v. Mead*, 2001 UT 58, ¶ 65, 27 P.3d 1115). And if each element of the crime is supported by at least some evidence, or reasonable inferences drawn from the evidence, we inquire no further. *Mead*, 2001 UT 58, ¶ 67.

¶13 Third, Defendant contends that his trial counsel was ineffective for failing to argue that the aggravated kidnapping charge merged with the aggravated sexual assault charge. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. A defendant who claims ineffective assistance of counsel must show "that counsel's performance was deficient" and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

ANALYSIS

I. The Trial Court Did Not Abuse Its Discretion by Denying Defendant's Motion for New Trial.

¶14 Defendant first argues that the trial court should have granted him an evidentiary hearing to question Juror, who

attended junior high with both of Defendant's sons but did not disclose that information during voir dire.[5] Defendant argues that he was entitled to a trial by an impartial jury and that because Juror could have been challenged for cause during voir dire, the court or counsel should have more fully investigated Juror's familiarity with Defendant. He asserts that, because his motion for a new trial alleged juror misconduct, the motion should have triggered such an investigation, including "full questioning by both parties" in an evidentiary hearing.

¶15    A motion for a new trial must "be accompanied by affidavits or evidence of the essential facts in support of the motion." Utah R. Crim. P. 24(b). And a defendant seeking a new trial because of alleged juror bias has the burden to prove actual, not suppositional, bias. *Turner v. University of Utah Hosps. & Clinics*, 2013 UT 52, ¶ 29, 310 P.3d 1212 (requiring the party alleging juror bias "to demonstrate that . . . [the] juror was, in fact, biased"). Assuming the defendant presents some evidence,

---

5. While not identified as a distinct issue in the briefs, at oral argument there was some discussion of whether Defendant's trial counsel properly handled this issue. We are unwilling to say it was ineffective assistance for trial counsel not to offer evidence of Juror's bias or to press more adamantly for an evidentiary hearing because counsel may well have chosen to forgo such measures, perhaps knowing that there was no evidence of actual juror bias. *See Strickland v. Washington*, 466 U.S. 668, 687, 689 (1984) ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"). For instance, counsel may have known that, if Juror were called, he would testify to having no knowledge of Defendant or his history of incarceration. In other words, counsel may have known Defendant was better off rolling the dice of innuendo and supposition rather than developing the actual facts about Juror.

the trial court may choose to hold an evidentiary hearing before ruling on the motion for new trial. *See State v. Stidham*, 2014 UT App 32, ¶ 27, 320 P.3d 696. But where a defendant fails to provide an affidavit or other evidence, the trial court has nothing to evaluate in an evidentiary hearing.[6] Thus, the issue here is whether Defendant presented sufficient evidence in his motion for new trial to suggest that Juror was actually biased so as to necessitate an evidentiary hearing. And assuming Defendant did not establish the need for an evidentiary hearing, the next question is whether a new trial was nonetheless merited given Defendant's claim about Juror's familiarity with Defendant's family members. *See State v. James*, 819 P.2d 781, 793 (Utah 1991).

¶16  Defendant alleged in his new trial motion that Juror attended school with his sons, that it was common knowledge at the school that Defendant was in prison, that Juror knew Defendant's daughter, and that Juror was the only member of the jury to linger in the courtroom after the jury was dismissed. But Defendant provided no affidavits or other evidence to support these allegations, even though he interviewed Juror, possessed the yearbooks he claimed would show that Juror

---

6. Rule 24 of the Utah Rules of Criminal Procedure contemplates that the evidence in support of a rule 24 motion may take time to procure, so it allows defendants a reasonable time to investigate and produce that evidence. *See* Utah R. Crim. P. 24(b). Defendant does not claim that he was not given this time. Rather, he urged the trial court to use its resources to question Juror when Defendant's trial counsel in fact interviewed Juror but did not secure his affidavit. Although Juror was subpoenaed for a hearing, when Juror did not appear and the trial court offered instead to review the State's taped interview, Defendant eventually acquiesced and failed to present any of the evidence he alleged would show inconsistencies in Juror's testimony and establish Juror's bias.

attended school with his sons for three years, and could, presumably, have gotten sworn statements from his children about their acquaintance with Juror and the basis for the claim that their father's imprisonment was a matter of common knowledge at the school. Thus, we cannot conclude that the trial court abused its considerable discretion in determining an evidentiary hearing to evaluate new evidence was unnecessary, when Defendant produced only innuendo and supposition rather than actual evidence.

## II. There Was Sufficient Evidence to Support Defendant's Aggravated Kidnapping Conviction.

¶17 Defendant next argues that there was insufficient evidence to support his conviction for aggravated kidnapping. At trial the State argued either of two episodes could constitute an aggravated kidnapping: (1) when the car was parked in the apartment complex parking lot and Defendant bit the victim or (2) when Defendant pulled the victim by the hair inside the apartment complex. Defendant contends that even if the jury believed all of the evidence that the State offered regarding these two episodes, neither constituted aggravated kidnapping. Because the State focused its response on the incident inside the apartment complex, we do the same.

¶18 To prove that an aggravated kidnapping occurred, the State must demonstrate that either a kidnapping or an unlawful detention occurred, in conjunction with aggravating circumstances. Kidnapping is defined by Utah law, in relevant part, as "intentionally or knowingly," in violation of the law and against the victim's will, "detain[ing] or restrain[ing] the victim for any substantial period of time" or "detain[ing] or restrain[ing] the victim in circumstances exposing the victim to risk of bodily injury." Utah Code Ann. § 76-5-301 (LexisNexis 2012). An unlawful detention, on the other hand, requires only that "the actor intentionally or knowingly, without authority of law, and against the will of the victim, *detains or restrains*

the victim." *Id.* § 76-5-304(1) (emphasis added). Aggravated kidnapping occurs when, during such a kidnapping or unlawful detention, the suspect intentionally "facilitate[s] the commission, [or] attempted commission, . . . of a felony; . . . hinder[s] or delay[s] the discovery or reporting of a felony; . . . inflict[s] bodily injury on or . . . terrorize[s] the victim or another; . . . or . . . commit[s] a sexual offense." *Id.* § 76-5-302(1)(b)(ii)–(iv), (vi).

¶19    Whether aggravating circumstances existed during the episode in the apartment complex is not a close question. During the detention, Defendant intentionally inflicted bodily injury on the victim by punching her in the face while he was still holding her by the hair. *See id.* § 76-1-601(3) (defining "[b]odily injury" as "physical pain, illness, or any impairment of physical condition"); *State v. Finlayson* (*Finlayson II*), 2014 UT App 282, ¶ 42, 362 P.3d 926 (relying on the victim's testimony that the defendant "hit and strangled her, . . . shoved her down the stairs, and sat on her" as evidence that the defendant "act[ed] with the intent to inflict bodily injury"). Further, Defendant does not dispute that these aggravating circumstances occurred. Thus, if a predicate kidnapping or unlawful detention occurred, the requirements for an aggravated kidnapping were satisfied.

¶20    Although a closer question, a reasonable jury could also have concluded that the episode in the hallway was an unlawful detention and, in conjunction with the infliction of bodily injury, an aggravated kidnapping. Defendant contends that the ten seconds during which he pulled the victim by her hair was too brief to satisfy the statute. But while the "kidnapping" alternative under the aggravated kidnapping statute may require "detain[ing] or restrain[ing] the victim for [a] substantial period of time," the "unlawful detention" alternative does not. *Compare* Utah Code Ann. § 76-5-301(1)(a), *with id.* § 76-5-304(1). Thus, provided that the victim was unlawfully detained or restrained, the amount of time the victim was under Defendant's control is of no moment. *See State v. Mecham*, 2000 UT App 247, ¶ 31 n.10, 9 P.3d 777 ("[T]here is no 'substantial period'

requirement in Utah's aggravated kidnaping statute, unlike Utah's simple kidnaping statute.") (citation omitted). *See also Finlayson II*, 2014 UT App 282, ¶ 38 (determining that the State had no obligation "to show that [the defendant] detained [the victim] for a substantial period of time" in order to prove aggravated kidnapping). Rather, to demonstrate aggravated kidnapping of the unlawful detention variant, the State must show, in addition to one or more aggravating circumstances, only that the defendant unlawfully detained or restrained the victim and that he did so intentionally or knowingly.

¶21 Defendant contends that the statute requires something "more active" than what occurred here and that the plain meaning of "detains or restrains," as used in the unlawful detention statute and by reference in the aggravated kidnapping statute, requires some exertion of control, such as imprisonment. Merriam-Webster's Dictionary[7] defines "detain" as follows: "to officially prevent (someone) from leaving a place: to hold or keep (someone) in a prison or other place" or "to restrain especially from proceeding." *Detain*, *Merriam-Webster's Dictionary*, http://www.merriam-webster.com/dictionary/detain [https://perma.cc/A4VF-W8UN]. And it defines "restrain" as "to prevent from doing, exhibiting, or expressing something" or "to limit, restrict, or keep under control" or "to deprive of liberty." *Restrain*, *Merriam-Webster's Dictionary*, http://www.merriam-webster.com/dictionary/restrain [https://perma.cc/VY9W-KFQ3]. These definitions imply that "detains or restrains" refers to restriction of the victim's movement, but neither definition requires, as Defendant asserts, complete confinement or imprisonment. And when interpreting the aggravated kidnapping statute in *State v. Sanchez*, 2015 UT App 27, 344 P.3d 191, we affirmed the use of a jury instruction defining "detain or

---

7. "A starting point for our assessment of ordinary meaning is the dictionary." *State v. Bagnes*, 2014 UT 4, ¶ 14, 322 P.3d 719.

restrain" as to "keep from proceeding, delay, keep in custody, confine, control, check, repress, limit, or restrict." *Id.* ¶¶ 15, 23 (internal quotation marks omitted). In that case, the jury reached a guilty verdict for aggravated kidnapping when defendant dragged the victim fifty-eight feet down a hallway. *Id.* ¶¶ 2, 4.

¶22 Based on *Sanchez* and the plain meaning of "detains or restrains," the question before us is whether a reasonable jury could have concluded that Defendant intentionally acted, however briefly, to impair the victim's ability to move freely. Here, the victim attempted to escape from Defendant by running down an apartment complex hallway and knocking on doors. Like in *Sanchez*, Defendant overpowered the victim by intentionally grabbing her hair as he tried to drag her down the hallway. He stopped her in her tracks and pulled on her, causing her to move backwards. Further, although he did not succeed in dragging her all the way back to his car, a reasonable jury could have inferred that his actions prevented her from escaping at that time. The plain meaning of the detention statute encompasses these events. *See Finlayson II*, 2014 UT App 282, ¶¶ 38–45 (concluding that the defendant's efforts to prevent the victim from escaping through either the front or back door and then sitting on her constituted aggravating kidnapping when committed "with intent to inflict bodily injury" and "with the intent to hinder or delay the discovery or reporting of a felony"); *State v. Ellis*, 2014 UT App 185, ¶ 10, 336 P.3d 26 (concluding that the defendant detained the victim, even though she was allowed to move about within the walls of her own home, because the defendant did not allow the victim to move freely away from him and used physical force to continue the confinement and keep her from escaping). We are not convinced that "reasonable minds must have entertained reasonable doubt" that Defendant exercised the control necessary to constitute a detention for purposes of the aggravated kidnapping statute. *See State v. Dunn*, 850 P.2d 1201, 1212 (Utah 1993).

III. Trial Counsel Was Not Ineffective for Failing to Move to
Merge Defendant's Convictions.

¶23　Finally, Defendant contends that even if there was sufficient evidence to support his aggravated kidnapping conviction, his trial counsel was ineffective for failing to argue that the two convictions should merge. To prove ineffective assistance of counsel, Defendant must show that trial counsel's decision not to move for merger was objectively unreasonable, and therefore deficient, and that the decision prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because we hold that Defendant's two convictions did not merge as a matter of law, Defendant was not prejudiced by his counsel's failure to make the argument and, therefore, his counsel was not ineffective. *See State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel.").

¶24　Merger protects defendants from multiple punishments for different but related offenses arising out of the same criminal activity. *State v. Lee*, 2006 UT 5, ¶ 31, 128 P.3d 1179 ("Where two crimes are defined narrowly enough that proof of one does not constitute proof of the other, but broadly enough that both may arise from the same facts, merger may be appropriate."). Merger commonly applies when "a defendant . . . [is] charged with committing both a violent crime, in which a detention is inherent, and . . . kidnaping based solely on the detention necessary to the commission of the [violent] crime." *State v. Diaz*, 2002 UT App 288, ¶ 17, 55 P.3d 1131. Thus, we must determine whether the kidnapping was "merely incidental or subsidiary to [the violent] crime." *State v. Couch*, 635 P.2d 89, 93 (Utah 1981).

¶25　To do so, we require the State to prove that the detention of the victim (1) was not "slight, inconsequential and merely incidental to the other crime," (2) was not "the kind inherent in the nature of the other crime," and (3) had "some significance independent of the other crime." *State v. Finlayson* (*Finlayson I*),

2000 UT 10, ¶ 23, 994 P.2d 1243 (citation and internal quotation marks omitted). Applying this three-part test in *Finlayson I*, where a defendant blocked his victim's escape during a sexual assault and then handcuffed her so that he could continue the assault, *id.* ¶ 4, our Supreme Court concluded that the defendant's convictions for aggravated sexual assault and aggravated kidnapping should have merged. *Id.* ¶¶ 23–24. Merger was appropriate because the acts of detention were committed during the course of a sexual assault, did not exceed the time necessary for the sexual assault, and had no independent significance from the assault. *Id.*

¶26 In *Finlayson II*,[8] we applied the *Finlayson I* test and held that the defendant's convictions for aggravated assault and aggravated kidnapping did not merge. *Finlayson II*, 2014 UT App 282, ¶ 53. There, the defendant physically assaulted the victim in their shared residence before she briefly escaped. *Id.* ¶ 2. When the victim broke free of the defendant and ran to the front door of the house, the defendant blocked the door. *Id.* ¶ 4. He then threw her off of a landing and down a flight of stairs to the basement, strangled her again, and sat on her for twenty minutes. *Id.* ¶¶ 4–5. Merger was inappropriate because the acts of detention—blocking the victim's exit from the house and sitting on top of her—were not inconsequential and the period of restraint was not incidental, as he held her for more than the amount of time necessary to complete the original assault. Further, the detention was not "inherent in the nature of the aggravated assault" but was independently significant because

---

8. The reader likely will have observed that the two cases involving the same defendant Finlayson are fourteen years apart. The cases were appeals from convictions involving two entirely separate incidents and two different victims. *See Finlayson II*, 2014 UT App 282, ¶ 3 n.5, 362 P.3d 926.

he could have pushed her down the stairs without also detaining her. *Id.* ¶¶ 51–52.

¶27    Similarly, in *State v. Lee*, 2006 UT 5, 128 P.3d 1179, and *State v. Sanchez*, 2015 UT App 27, 344 P.3d 191, merger did not occur when the defendants sexually assaulted their victims and subsequently dragged them a short distance. *See Lee*, 2006 UT 5, ¶ 34; *Sanchez*, 2015 UT App 27, ¶¶ 2, 7. In *Lee*, the defendant grabbed a woman who was walking on the side of a highway and sexually assaulted her. 2006 UT 5, ¶¶ 3–4. After she broke free, the woman resumed walking down the highway, but the defendant grabbed her from behind, slamming her to the pavement and dragging her across the highway. *Id.* ¶ 4. He controlled her long enough to pull her into an alleyway, kick her repeatedly, and pull her pants down. *Id.* The Utah Supreme Court concluded that the dragging, kicking, and second disrobing were not "inherent in the nature of" the first sexual assault, explaining that "most assaults do not involve the relocation of the victim from one site to another." *Id.* ¶ 34. And this episode was "significantly independent of" the first sexual assault because it "made the assault far more difficult to detect than it would have been on [the highway]." *Id.*

¶28    In *Sanchez*, we held that merger did not occur when a defendant assaulted a victim who subsequently escaped to an apartment down the hall from where the original assault occurred, whereupon the defendant caught up to the victim and dragged her fifty-eight feet down a hallway and back into his own apartment to prevent her from getting help. 2015 UT App 27, ¶¶ 2–3, 12, 16. He then bit her ear so hard that it was nearly ripped off. *Id.* ¶ 3. These activities were not inherent in the initial simple assault. *Id.* ¶ 12. In both cases, our analysis focused on the defendants' overpowering their victims and dragging them to different, less public locations. *Lee*, 2006 UT 5, ¶ 34; *Sanchez*, 2015 UT App 27, ¶ 12.

¶29    Here, if the State based its aggravated kidnapping charge only on the episode in the car, *Finlayson I* would be dispositive. In the car, Defendant controlled the victim, and she was not free to leave, as illustrated by his threatening to gut her and grabbing her pants in an attempt to prevent her escape. But he detained her only for the purpose of continuing the ongoing sexual assault, as was the case in *Finlayson I*.

¶30    The aggravated kidnapping conviction in this case can, however, readily be sustained on the basis of the events in the hallway, which are much more similar to *Finlayson II*, *Lee*, and *Sanchez*. In each of those cases, the defendant, after an initial assault, stopped the victim's escape and then detained her. As in those cases, Defendant sexually assaulted the victim before she successfully escaped, and then he initiated a new criminal act by impeding her movement—grabbing her hair and pulling her down the hallway. Similar to the defendants throwing the victim down the stairs in *Finlayson II*, kicking and disrobing the victim in *Lee*, and biting and bloodying the victim in *Sanchez*, Defendant here detained the victim long enough to commit an uncharged assault by punching her in the face. And as in the previous cases, while the dragging was only for a short period of time, that period exceeded the time Defendant needed to commit the sexual assault, as that crime was already complete when the victim escaped from Defendant's car and began frantically searching for help in the apartment complex. Thus, the hair pulling and dragging down the hallway were not incidental to the sexual assault but were a part of a *subsequent* physical assault. Likewise, the detention was not of the kind inherent in the sexual assault because it came after the completion of the sexual assault. Finally, the acts of detention had independent significance because, as in *Finlayson II*, Defendant did not need to chase the victim and do violence to her in order to perpetrate the sexual assault. And as in *Sanchez*, it is fair to infer that Defendant detained the victim, in part, to keep her from finding help and reporting the sexual assault.

¶31    Because we conclude that, as a matter of law, trial counsel could not have established that the kidnapping and sexual assault charges merged, we also conclude that counsel's election not to move for merger of the two convictions was not ineffective assistance. Counsel is not obligated to make futile motions. *See State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546.

CONCLUSION

¶32    Defendant has failed to persuade us that any of his claims on appeal have merit. First, Defendant did not produce evidence in support of his motion for new trial, and we defer to the trial court's substantial discretion in denying the requested new trial for lack of evidence. Second, there was sufficient evidence from which a reasonable jury could have found that Defendant committed an aggravated kidnapping. And third, Defendant's trial counsel did not provide ineffective assistance for failing to argue merger when, as a matter of law, merger was not appropriate in this case and any such motion would therefore have been futile.

¶33    Affirmed.

_____